Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 1 of 38 PageID #:473

Turner v. City of Chicago, Not Reported in Fed. Supp. (2020)

2020 WL 1548957
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Michael TURNER, Plaintiff,

v.

CITY OF CHICAGO, Defendant.

Case No. 1:19-cv-00272

|

Signed 03/31/2020

**Attorneys and Law Firms**

Clinton P. Davis, Daniel Francis Gallagher, Vrdolyak
Law Group, LLC, Chicago, IL, for Plaintiff.

Raoul Vertick Mowatt, Scott A. Cohen, Stephanie
Amanda Sotomayor, Emily Elizabeth Dory, City of
Chicago Department of Law, Federal Civil Rights Liti.,
Jonathan Clark Green, Chicago Corporation Counsel,
Chicago, IL, for Defendant.


**MEMORANDUM OPINION AND ORDER**

SHARON JOHNSON COLEMAN, United States
District Judge

**\*1** After the Court granted defendant City of
Chicago's motion to dismiss plaintiff Michael Turner's
*Monell* claim in December 2019, Turner filed
the present one-count second amended complaint
realleging his *Monell* claim. Before the Court is
the City's motion to dismiss the second amended
complaint under Federal Rule of Procedure 12(b)(6).
For the reasons outlined below, the Court grants the
City's motion with prejudice.


**Background**

The Court takes the following facts from the second
amended complaint and treats them as true for the
purposes of this motion. On January 14, 2017, Turner
was outside of his family-owned auto repair shop in
Chicago, Illinois, where he was sitting in a parked
car with the engine off and without possession of the
car's keys. Two Chicago police officers, David Bachlar
and Craig Coglianese, approached Turner in the parked
vehicle, and without reasonable suspicion or lawful
basis, asked him what he was doing. The officers then
ordered Turner out of the car and handcuffed him.
When Turner asked if he was under arrest, the officers
denied it.

Officer Bachlar then searched the car without Turner's
consent while Officer Coglianese detained Turner.
According to Turner, the officers began questioning
him about why he was on the premises and how the
car could have been parked there because Turner did
not have a valid driver's license. While Turner was still
handcuffed, the officers forcefully grabbed Turner and
knocked him unconscious. He awoke on the ground
with fractures, lacerations, deformed teeth, abrasions,
and blood covering his body. Criminal proceedings
were initiated against Turner and then resolved in
his favor at a June 2018 bench trial in the Cook
County Circuit Court. Turner alleges that at his bench
trial, Officer Bachlar provided false testimony about
the January 2017 incident stating that Turner resisted
arrest and fled from the officers.

Turner further alleges that Officers Bachlar and/or
Coglianese have participated in previous unlawful
encounters similar to his experience in January 2017.
He states that the City continues to deploy these
officers without improved supervision or training.
According to Turner, there exists within the Chicago
Police Department ("CPD") certain policies and
procedures which lead to unconstitutional injuries of
civilians, including Turner. Specifically, he alleges that
these policies and practices include:

- Failing to invest in the resources, facilities,
  staffing, and planning required to train a
  department of approximately 12,000 members;

- Allowing department-wide use of excessive force
  in violation of the Fourth Amendment;

- Failing to accurately document and meaningfully
  review officers' use of force perpetuating a
  pattern of unreasonable force;

- Putting in place policies and practices that impede
  the investigation of officer misconduct;

- Conducting investigations that are neither
  complete or fair;

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 2 of 38 PageID #:474

Turner v. City of Chicago, Not Reported in Fed. Supp. (2020)

• Failing to take sufficient steps to prevent officers from deliberately concealing misconduct;

**\*2** • Employing a discipline system that lacks integrity and does not effectively deter misconduct; and/or

• Failing to provide officers with sufficient direction, supervision, or support to ensure lawful and effective policing.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**Discussion**

To successfully allege a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a plaintiff must show "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019); *see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) ("In order to hold a government entity such as a municipality or county liable under section 1983, the plaintiff must demonstrate that the government entity [ ] itself caused the constitutional violation at issue."). As to the municipal action, the constitutional deprivation can be caused by an express municipal policy, a widespread practice that is so permanent that it constitutes a practice with the force of law, or a decision by a municipal agent with final policymaking authority. *Ruiz-Cortez*, 931 F.3d at 598; *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

*Widespread Practice or Custom*

In Turner's second amended complaint, he lists several alleged *de facto* policies and practices related to the CPD. To sufficiently allege the existence of a widespread practice so permanent that it constitutes a policy with the force of law, Turner must set forth some facts that his incident was not an isolated or random occurrence. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom."); *see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) ("We have not adopted bright-line rules defining 'widespread custom or practice,' but there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events.").

**\*3** Turner conclusively states that the City's policies of nonfeasance create "unwarranted and unlawful treatment of civilian citizens, including plaintiff." Nonetheless, Turner does not reference any specific instances of harm to other citizens, but rather cites a 1972 report by United States Representative Ralph H. Metcalf concerning the CPD and officer misconduct. Without more context showing similarities to the present circumstances, the Court cannot reasonably infer that there is such a pervasive practice or custom within the CPD which caused Turner's constitutional injuries. Turner's threadbare assertion that other instances similar to his have occurred in some manner, by some unspecified officers, during an unspecified

time period, does not raise Turner's claim for relief above speculation. *See* Twombly, 550 U.S. at 555.

*Failure to Train, Investigate, Supervise, and Discipline*
Next, Turner alleges that his injuries arise from the CPD's failure to train, investigate, supervise, and discipline officers in relation to the illegal use of force. Failure to train "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). A prerequisite to deliberate indifference is that "the defendant must have actual or constructive notice of a problem." *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). Actual or constructive notice can be shown by a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citation omitted).

Because Turner has failed to allege any other instances of constitutional violations or similar injuries by Chicago police officers other than his own, there are limited additional facts in his second amended complaint that would lead to a reasonable inference of deliberate indifference. Turner, for example, alleges that "[O]fficers Bachlar and/or Coglianese have participated in previous unlawful encounters similar to the above-mentioned behaviors, exhibiting a pattern of unconstitutional acts for at least a decade prior to January 14, 2017," and yet the CPD "continued to deploy said officers, without improved supervision or training, to Chicago streets." Outside of these bare-boned statements, there are no further facts substantiating these allegations giving them texture or context. Without more, all Turner has provided is a threadbare recitation of a failure to train claim under *Monell*, which is exactly the type of assertion that *Iqbal* forbids. Even if Chicago police officers have engaged in similar, unlawful acts, Turner has

not sufficiently alleged that the CPD had actual or constructive notice of such problems. Because no other facts link these allegations to particular instances of police misconduct, there is not enough for this Court to draw a reasonable inference that the CPD is at fault under this theory of liability. [1]

*Final Policymaking Authority*
Last, Turner has not adequately alleged that someone with final policymaking authority was involved in the deprivation of his constitutional rights. Instead, he broadly states that these established policies and procedures "were adopted and promulgated through the actions and inactions of senior and immediate supervising officers of the Department and are thereby ratified by defendant." Again, Turner provides no framework as to who these supervising and immediate officers were, what their involvement was with the present case or others, and what "actions and inactions" they took which purportedly ratified this type of conduct. Any such allegations are necessary to tie Turner's injuries back to a person with final policymaking authority over municipal action or inaction. In sum, Turner has failed to allege sufficient facts to nudge his final policymaker allegations across the line from conceivable to plausible. *See* Twombly, 550 U.S. at 570; *Taha v. Int'l Bhd. of Teamsters, Local 781,* 947 F.3d 464, 472 (7th Cir. 2020).

**Conclusion**
***4** For the foregoing reasons, this Court grants defendant's motion to dismiss with prejudice because plaintiff has had at least one opportunity to amend his pleadings. *See* Runnion v. Girl Scouts of Greater Chicago & Nw. Ind., 786 F.3d 510, 518 (7th Cir. 2015). [43]. Civil case terminated.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1548957

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 4 of 38 PageID #:476

Turner v. City of Chicago, Not Reported in Fed. Supp. (2020)

**Footnotes**

1      Although the Court is aware of reports in recent years concerning complaints about police
       misconduct directed at certain demographics within the City of Chicago, the law, including the
       federal pleading standards, requires litigants to allege sufficient facts plausibly stating their claims
       for their cases to survive motions to dismiss.

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Jackson v. Village of Justice, Not Reported in Fed. Supp. (2020)

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 5 of 38 PageID #:477

2020 WL 1530734
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Robert JACKSON, Plaintiff,
v.
The VILLAGE OF JUSTICE and
Officer Damien Dyas, Defendants.

No. 17-cv-07739
|
Signed 03/31/2020

**Attorneys and Law Firms**

Susan M. Pavlow, Law Offices of Susan M. Pavlow,
Chicago, IL, for Plaintiff.

Gail Lynne Reich, Michael J. Victor, O'Halloran
Kosoff Geitner & Cook, LLC, Northbrook, IL, for
Defendants.

**MEMORANDUM OPINION AND ORDER**

Honorable Edmond E. Chang, United States District
Judge

 **\*1** Robert Jackson brings various civil-rights and
state-tort claims against Village of Justice Police
Officer Damien Dyas for injuries sustained during
an arrest. R. 34, Am. Compl.[1] In addition to the
individual claims against Dyas, Carr also seeks to
hold the Village of Justice liable for what Dyas did.
Specifically, Jackson brings a *Monell* claim against the
Village, arguing that Dyas's alleged misconduct was
caused in part by the Village's perpetuation of a police
code of silence, as well as its failure to adequately train
officers on the use of excessive force. 42 U.S.C. §
1983. The Village now moves to dismiss the *Monell*
claim against it. R. 49, Mot. Dismiss. (The individual
claims against Dyas are not directly at issue in this
motion.) For the reasons discussed below, the Village's
motion is granted.

## I. Background

For the purposes of this motion, the Court accepts
as true the allegations in the Amended Complaint.
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In
October 2016, Robert Jackson was at his home in
Evergreen Park in Cook County, Illinois, when two
police officers from the Village of Justice (another
suburb within Cook County) showed up at his
door. Am. Compl. ¶¶ 8-9. According to Jackson,
the two officers were Damien Dyas and an Officer
"Malloy" (Jackson does not provide his first name). *Id.*
¶ 9.

Jackson asked the officers why they were at his house.
Am. Compl. ¶ 9. The officers told him that they were
there to serve an order of protection that had been
filed against him. *Id.* ¶ 10. They also told him that he
needed to come with them. *Id.* In response, Jackson
asked whether there was a warrant for his arrest. *Id.* ¶
11. The officers replied no, but maintained that Jackson
needed to come with them because they had an order
of protection to serve him. *Id.* ¶ 12. Jackson then asked
if he could see the order. *Id.* ¶ 13. He also told the
officers that there was no reason for him to come with
them if he was not under arrest, but that he would be
willing to "make an appointment to come down and
speak with them accompanied by his parole officer or
his attorney." *Id.*

All of a sudden, the officers grabbed Jackson. Am.
Compl. ¶ 14. Specifically, "Dyas grabbed Jackson's
arm and pulled him from the doorway," while Malloy
"bent down and pulled Jackson's leg." *Id.* The officers
then "threw Jackson to the ground" down eight
concrete steps. *Id.* ¶ 16. The fall dislocated his
collarbone. *Id.* After that, the officers handcuffed him.
*Id.*

At that point, "other officers arrived at the scene." Am.
Compl. ¶ 17. Jackson was then placed into a squad
car and taken to the Justice Police Department. *Id.* ¶
18. At the police station, Jackson complained of chest
and shoulder pain, so he was taken to the hospital for
overnight treatment. *Id.* ¶ 19.

 **\*2** The next day, Officer Dyas and another officer
(it is unclear if it was Malloy) drove Jackson from

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 6 of 38 PageID #:478

Jackson v. Village of Justice, Not Reported in Fed. Supp. (2020)

the hospital to the Cook County Department of Corrections. Am. Compl. ¶ 20. During the car ride, Jackson "began having difficulty breathing because his dislocated collarbone was blocking his windpipe." *Id.* Jackson stuck his head out of the police car window to try to get more air. *Id.* When he did this, the officers stopped driving and removed Jackson from the car. *Id.* ¶ 21. (Jackson was still in handcuffs at this point. *Id.*) Dyas and the other officer "beat Jackson for several minutes," ultimately leaving him with three fractured ribs. *Id.* Jackson alleges that during the beating, he told the officers, "I can't breathe," and Dyas simply responded, "If you can talk, you can breathe." *Id.* According to Jackson, neither Dyas nor "the officers" did anything to "stop or report any officers' use of excessive force and failed to intervene during the battery." *Id.* ¶ 22.

After the beating, the officers "picked Jackson up, shackled his arms and legs and threw him horizontal into the police car." Am. Compl. ¶ 23. In addition to the three fractured ribs, Jackson was also left with a broken collarbone (it is unclear if this was a different injury from the broken collarbone he sustained the previous night) and an injured anklebone. *Id.* ¶ 24. He had difficulty walking and had to wear a brace. *Id.*

According to Jackson, Dyas and the officers later tried to cover up their misconduct by falsely reporting that they had told Jackson he was under arrest and that Jackson had resisted arrest, which is why they had to use force on him. Am. Compl. ¶ 26. Jackson was not served with the order of protection—which was the ostensible purpose of the original encounter at his house—until November 2017, more than a year later. *Id.* ¶ 25.

Jackson now alleges that the Village of Justice is in part responsible for his injuries. Specifically, he claims that the Village failed to "adequately train, supervise, control, intervene, report, review, investigate, discipline and dismiss" its officers on the use of both excessive force and proper citizen's arrests. Am. Compl. ¶¶ 53-54. Jackson also claims more generally that the Village failed to even *have* adequate policies related to excessive force and citizen's arrests. *Id.* And finally, Jackson argues that the Village maintains a "code of silence," under which officers help cover up each other's misconduct. *Id.* ¶ 53.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). [2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

**\*3** Under *Monell v. Department of Social Services of New York*, a municipality can be held liable on a § 1983 claim only "when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible for under § 1983." 436 U.S. 658, 694 (1978). To state a *Monell* claim against the Village, Jackson must

Jackson v. Village of Justice, Not Reported in Fed. Supp. (2020)

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 7 of 38 PageID #:479

allege: (1) the deprivation of an underlying substantive constitutional right; (2) the existence of an official policy or other governmental custom; and (3) that this policy or custom was the moving force behind the deprivation of his substantive constitutional rights. [3] *See Teesdale v. City of Chi.*, 690 F.3d 829, 833 (7th Cir. 2012). For the reasons explained below, Jackson has not adequately alleged the existence of a policy or custom, so the *Monell* claim against the Village must be dismissed, albeit without prejudice for now.

In order to adequately allege the existence of an official policy or custom, Jackson must point to (1) an express policy that, when enforced, caused a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, constituted a custom or usage with the force of law; or (3) a constitutional injury by a person with final policymaking authority. *McTigue v. City of Chi.*, 60 F.3d 381, 382-83 (7th Cir. 1995). Here, Jackson has chosen the second of the three routes: he alleges that although the Village has not explicitly and officially promulgated an unconstitutional policy, it has failed to train its officers and maintained an unwritten custom that caused the excessive force. The accusations can be broadly divided into two categories. First, there is the allegation that the Village not only failed to adequately train, supervise, and discipline its officers on excessive force and citizen's arrests, but also, relatedly, failed to even *have* "adequate" policies in the first place. *See* Am. Compl. ¶¶ 53-54. The Court will analyze these allegations as a group because they all rest on a claim of failure or inadequacy, as opposed to a claim that some affirmative policy has caused injury. Then, separately, Jackson alleges that the Village maintains a code of silence, which "serves to ratify ... and authorize" officer misconduct. *Id.* ¶ 53.

The Village moves to dismiss on the basis that Jackson has failed to identify "any other circumstance in which Dyas or other Village of Justice police officers engaged in unconstitutional conduct, and were not reprimanded, disciplined, or criminally prosecuted, or where there was a code of silence." R. 50, Def.'s Br. at 6. The Village argues that Jackson only identifies a single instance of "unconstitutional conduct arising out of his *own* arrest," which is not enough to conclude that there thus must have been a Village *policy. Id.* at 5 (emphasis added). In response, Jackson points out that he is "not

required to identify every other or even one other individual" who has suffered the same constitutional injury in order to establish that the Village had these policies (or failed to have these policies) in place. R. 56, Pl.'s Resp. Br. at 1 (citing *White v. City of Chi.*, 829 F.3d 837, 844 (7th Cir. 2016)).

Generally speaking, Jackson is right that there is no blanket rule that *Monell* plaintiffs must always allege multiple instances of unconstitutional conduct in order to show that a policy exists. There are certainly contexts in which an allegation of a single instance of wrongdoing is enough to support an inference that a more *systemic* policy or custom exists. For example, in the medical-treatment context, a single allegation that a jail doctor refused to perform a procedure and explained to the detainee that the municipality *never* allows that particular procedure might be enough to support an inference of a systemic policy or custom. Similarly, in *White v. City of Chicago*, a Seventh Circuit case which both parties cite, the plaintiff was challenging an arrest-warrant application policy premised in part on a "standard printed form that does not require specific factual support for an application for an arrest warrant." 829 F.3d at 844. The Seventh Circuit held that the form's lack of a factual-support section (coupled with the plaintiff's description of his individual experience) was enough to allege that a widespread policy existed. *Id.* The fact that a "standard form" was used in one particular instance could support a reasonable inference that that standard form was also used in all or many instances.

**\*4** But Jackson's case arises in a different context from these examples. To repeat, it is true that there is no blanket requirement that a *Monell* plaintiff must allege multiple instances of wrongdoing. But context matters. In some cases—like Jackson's—the nature and specifics of the underlying constitutional claim demand that more than one instance *is* needed to make out a plausible inference for the existence of a widespread but unwritten policy or custom. Here, Jackson's allegations are really much more specific to him, rather than suggestive of a more systemic practice. Jackson is essentially arguing that because he was subjected to excessive force by Officer Dyas (and a few other officers) in October 2016, then that means the Village as a whole has a widespread policy

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 8 of 38 PageID #:480

Jackson v. Village of Justice, Not Reported in Fed. Supp. (2020)

or custom in which officers are not trained, supervised, or disciplined, or, alternatively, that the Village simply does not maintain any "adequate" policy whatsoever on excessive force or proper arrest procedures. But that is too large of a logical leap to make. This is unlike *White*, for instance, where evidence of a systemic problem (the inadequate warrant-application form) was embedded in the plaintiff's individual experience.

Here, Jackson's allegations only go so far as to specify that he himself suffered excessive force at the hands of a few officers. To be fair, he does allege that based on "information and belief," both Officer Dyas and other Village of Justice officers have "a history of violating constitutional rights of citizens, including but not limited to civilian misconduct complaints." Am. Compl. ¶¶ 31-32. But he does not tie this alleged "history" of misconduct to any sort of broader policy, nor even any failure to discipline Dyas on an individual level. (For instance, there is no allegation that Officer Dyas had managed to escape discipline on previous civilian-misconduct complaints.) Similarly, there are no factual allegations (as opposed to conclusory allegations) linking the alleged misconduct of the individual officers in this case to any of the other alleged policies or customs in the amended complaint (such as failure to train, supervise, or maintain adequate policies). So the *Monell* claim on these theories must fail.

It is also worth mentioning that to the extent that Jackson is pursuing failure to train, supervise, and discipline theories, the substantive bar is even higher: "the inadequacy of police training may serve as the basis for 🚩 § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."

🚩 *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). *See also Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019) ("Failure-to-supervise claims, like failure-to-train claims, are a tenuous form of *Monell* liability" and require deliberate indifference); 🚩 *Cazares v. Frugoli*, 2017 WL 1196978, at *19 n.16 (N.D. Ill. Mar. 31, 2017) (noting that federal courts have applied the deliberate indifference standard to failure-to-discipline claims). In the municipal liability context (as distinct from Eighth Amendment prison-conditions cases), deliberate indifference means the

Village "(1) failed to provide adequate training in light of foreseeable consequences; or (2) failed to act in response to repeated complaints of constitutional violations by its officers." 🚩 *Miranda v. Cty. of Lake*, 900 F.3d 335, 345 (7th Cir. 2018) (cleaned up). That is, the Village must have been on "actual or constructive notice of a problem." *Id.* Here, Jackson has not met that high bar. The allegations in his current complaint do not support a plausible inference of deliberate indifference on the part of the Village.

The code-of-silence allegation is a much closer call. The theory here is that the Village maintained a policy or custom in which officers help cover up police misconduct and intentionally do not intervene in each other's wrongdoing. *See* Pl.'s Resp. Br. at 2. Reading the Amended Complaint generously, Jackson technically alleges two separate instances during which at least two different Village of Justice officers failed to intervene when Officer Dyas beat him. Am. Compl. ¶¶ 14, 16, 21-22. At the end of the day, however, these allegations are still premised on Jackson's individual experience. At most, Jackson has sufficiently alleged that in *his* particular case, Officer Dyas and his partners helped cover up each other's wrongdoing—but this is not enough to plead *Monell* liability. And again, this is not to say there is a blanket requirement that 🚩 § 1983 plaintiffs must always allege multiple narratives of misconduct in order to successfully allege a policy or custom. But in *this* case, based on these facts, there is not enough to connect the dots between what happened to Jackson and his conclusion that the Village as a whole maintained a widespread policy or custom where officers routinely cover up each other's crimes.

**\*5** For all these reasons, Jackson has failed to adequately allege the existence of a policy or custom, and the *Monell* claim against the Village must be dismissed. That being said, the dismissal is without prejudice (even though Jackson has already amended his complaint once). Specifically, Jackson is authorized to take discovery "from the ground up," which means he may still try to establish the existence of a policy or custom through discovery from the *individual officers* about what they personally know. So, for instance, he is free to ask Officer Dyas questions about whether he has ever had training on

Jackson v. Village of Justice, Not Reported in Fed. Supp. (2020)

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 9 of 38 PageID #:481

excessive force, and if so, what kind of training. Those are the sorts of questions that a plaintiff is allowed to ask in exploring individual-officer liability, and they can also be the basis for a viable set of *Monell* allegations. (In contrast, Jackson is not permitted at this point to engage in broad-based *Monell* discovery against the Village itself.) Depending on the types of admissions he can elicit, Jackson might be able to then build a viable *Monell* claim.

The same also applies to the code-of-silence claim. Jackson may ask questions about the existence of a code of silence (which the officers will likely deny), and then he can try to elicit the disciplinary histories of individual officers, which could produce enough facts to state a *Monell* code of silence claim at the pleading stage. *See, e.g.,* 🚩 *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 892 (N.D. Ill. 2016) (allowing code-of-silence claim to survive where conclusory assertions were buttressed by numerous factual allegations); 🚩*Baskins v. Gilmore*, 2018 WL 4699847, at *6 (N.D. Ill. Sept. 30, 2018) (allowing code-of-silence claim to survive where conclusory allegations had a factual foundation).

One final point: just because the *Monell* claim against the Village has been dismissed (for now), that does not mean that Jackson is barred from later arguing at *trial* (if things get that far) that these particular individual officers had a motive to cover up each other's wrongdoing. In other words, today's holding just means that Jackson has not alleged enough to support an inference of an actual *policy or custom* spanning the entire Village of Justice Police Department. When it comes to individual officers or groups of officers, though, Jackson is still free to argue that a cover-up existed in his particular case and that the officers were motivated to do so because they worked together.

### IV. Conclusion

The *Monell* claim against the Village of Justice is dismissed without prejudice. In light of Second Amended General Order 20-0012, the status hearing of April 28, 2020 is reset to May 27, 2020 at 9:30 a.m.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1530734

### Footnotes

1    The Court has federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state-law claim under 🚩28 U.S.C. § 1367. Citations to the record are noted as "R." followed by the docket number, and when necessary, the page or paragraph number.

2    This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

3    The parties have not really briefed the "constitutional deprivation" element of the *Monell* claim, so the Court does not address that issue here and assumes for purposes of this motion that the underlying alleged constitutional deprivations—Jackson's excessive-force claims against Dyas —are valid.

---

End of Document                                         © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 10 of 38 PageID #:482

Shields v. City of Chicago, Not Reported in Fed. Supp. (2018)

KeyCite Yellow Flag - Negative Treatment

Distinguished by Terry v. County of Milwaukee, E.D.Wis., June 4, 2018

2018 WL 1138553

Only the Westlaw citation is currently available.

United States District Court,

N.D. Illinois, Eastern Division.

Alan SHIELDS, Plaintiff,

v.

CITY OF CHICAGO, et al., Defendants.

Case No. 17 C 6689

|

Signed 03/02/2018

**Attorneys and Law Firms**

Patrick William Morrissey, Thomas Gerard Morrissey, Thomas G. Morrissey, Ltd., Chicago, IL, for Plaintiff.

Devlin Joseph Schoop, Iris Chavira, Jessica Gomez-Feie, C. Ester Choi, Caroline Jane Fronczak, City of Chicago Department of Law, Jessica D. Ziswa, City of Chicago, Federal Civil Rights Litigation, Chicago, IL, for Defendants.

## ORDER

AMY J. ST. EVE, United States District Court Judge

**\*1** The Court denies Defendant City of Chicago's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Plaintiff's *Monell* claim as alleged in Count V of the Complaint. [31]. Status hearing set for March 21, 2018 is stricken and reset to March 12, 2018 at 8:30 a.m.

## STATEMENT

On December 20, 2017, Plaintiff Alan Shields filed the present five-count Amended Complaint against the City of Chicago and individual Chicago Police Officers bringing constitutional claims, along with a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Before the Court

is the City's motion to dismiss Plaintiff's *Monell* claim alleged in Count V pursuant to Rule 12(b)(6). For the following reasons, the Court denies Defendant's motion.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union,* 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). When determining the sufficiency of a complaint under the plausibility standard, courts accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *See Forgue v. City of Chicago,* 873 F.3d 962, 966 (7th Cir. 2017); *Roberts v. City of Chicago,* 817 F.3d 561, 564 (7th Cir. 2016).

## BACKGROUND

Plaintiff alleges that he is disabled and substantially limited in the ability to move, and that during the relevant time period he required ambulatory aids because of his paraplegia. (R. 28, Compl. ¶ 5.) At 11 p.m. on June 6, 2016, Chicago Police Officers stopped Plaintiff, who was using crutches to ambulate. (*Id.* ¶ 6.) Defendant Officer Shane Coleman approached Plaintiff and ordered him to place his hands on the police vehicle. (*Id.* ¶ 7.) Plaintiff objected because he could not put down his crutches to walk.

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 11 of 38 PageID #:483

Shields v. City of Chicago, Not Reported in Fed. Supp. (2018)

(*Id.* ¶ 8.) Defendant Coleman nonetheless searched Plaintiff, which caused him to lose balance and fall. (*Id.* ¶ 9.) While he was on the ground, Defendant Coleman handcuffed Plaintiff and then Defendant Officers Coleman and Michael McAuliffe gave him commands to stand up. (*Id.* ¶ 10.) Plaintiff repeatedly told Defendant Officers that he was paraplegic and could not stand. (*Id.*) Plaintiff alleges that Defendants Coleman and McAuliffe nonetheless dragged him to the door of the police vehicle and threw him in the backseat. (*Id.* ¶ 11.) Defendant Officers then transported Plaintiff to the Seventh District Police Station. (*Id.*)

**\*2** After arriving at the Seventh District, Defendants McAuliffe and Coleman ordered Plaintiff to ambulate from the police vehicle to the station without any aid, after which Plaintiff told them he could not ambulate without his crutches. (*Id.* ¶¶ 13, 14.) Defendants Coleman and McAuliffe then summoned the attention of Defendant Sergeant Patrick Josephs and other officers, after which these officers started to drag Plaintiff into the police station. (*Id.* ¶ 15.) Immediately prior to entering the station, police removed Plaintiff's handcuffs and allowed him to use crutches to ambulate. (*Id.*)

Once in the processing room, Plaintiff asserts that Defendant Officers Coleman, McAullife, Josephs, Raul Nava, Robert Bandola, Wayne Wiberg, and Jacob Wojtaczka used unreasonable force on him. (*Id.* ¶ 16.) Plaintiff contends that the officers then handcuffed him and dragged him on the floor, which was captured on surveillance video. (*Id.* ¶ 17.) Plaintiff states that at all relevant times, Defendant Officers knew he was unable to walk without crutches. (*Id.* ¶ 18.) He also maintains that he requested medical attention due to the injuries caused by Defendant Officers' use of unreasonable force. (*Id.*) According to Plaintiff, the officers nevertheless placed him into a cell and left him on the floor without crutches. (*Id.* ¶ 19.) Thereafter, Plaintiff made numerous requests for medical attention, yet Defendant Officers failed to respond. (*Id.* ¶ 20.) Plaintiff then started a fire in his cell. (*Id.*) Plaintiff alleges that thereafter Defendant Officers took him out of the cell and "stomped" on him. (*Id.* ¶ 21.)

Subsequently, Plaintiff was transferred to Mt. Sinai Hospital where he was intubated due to a crushed larynx. (*Id.* ¶ 22.) Shortly thereafter, Defendant Officers completed paperwork, including a Tactical Response Report ("TRR"), and Defendant Lieutenant Wiberg approved the amount of force Defendant Officers used when arresting and detaining Plaintiff. (*Id.* ¶¶ 23-25.) According to Plaintiff, the Commander of the Seventh District also approved this use of force. (*Id.* ¶ 26.)

At some point later, Plaintiff requested that the Independent Police Authority ("IPRA") investigate Defendant Officers' use of force. (*Id.* ¶ 27.) To that end, the IPRA took Plaintiff's statement, obtained the police department records relating to Plaintiff's arrest, including the surveillance video, and interviewed two members of the Chicago Fire Department. (*Id.* ¶ 28.) The IPRA, however, did not interview any member of the CPD regarding Plaintiff's allegations of misconduct. (*Id.*) The IPRA did not recommend disciple for any of the individual Defendant Officers. (*Id.* ¶ 29.)

In Count V, Plaintiff brings a claim against the City based on 🔖 *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658 (1978). Specifically, Plaintiff alleges that at all relevant times, the CPD engaged in a custom or practice of using excessive force due, in part, to deficiencies in training, supervision, and accountability. (*Id.* ¶ 44.) Plaintiff maintains that the City has delegated complete responsibility to the IPRA to investigate and recommend discipline for CPD officers accused of use of excessive force and that the IPRA is understaffed and limited by the Chicago Police Officers' collective bargaining agreements ("CBAs"). (*Id.* ¶¶ 45, 46.) In particular, Plaintiff explains that the CBA with the Fraternal Order of Police bars the IPRA from interviewing accused police officers until all other investigative steps are completed and that this agreement substantially impairs the IPRA's ability to investigate police misconduct resulting in no disciple for officers who use excessive force. (*Id.* ¶ 46.)

**\*3** In addition, Plaintiff states that it is common knowledge among the CPD that misconduct complaints reviewed by the IPRA do not result in immediate discipline. (*Id.* ¶ 50.) Plaintiff further asserts that when he was detained on June 6, 2016,

Defendant Officers knew the City had a policy or practice that did not hold officers accountable for their use of excessive force. (*Id.* ¶¶ 52, 53.) Also, Plaintiff states that Defendant Officers Josephs and Wiberg knew from their past experience with IPRA complaints that it was highly unlikely that the IPRA would recommend discipline for the alleged misconduct. (*Id.* ¶¶ 51, 54.) Further adding to this custom or practice, the IPRA did not request statements from the Defendant Officers (as barred by their CBAs). (*Id.* ¶ 55.) Plaintiff also highlights the United States Justice Department's ("DOJ") January 2017 Report concluding that the CPD has engaged in a custom or practice of unreasonable force, due in part, to deficiencies in training, supervision, and accountability. (*Id.* ¶ 57.) Further, Plaintiff points to the existence of a "code of silence" where Chicago Police Officers conceal police misconduct such as excessive force, including that a Police Accountability Task Force Report found that the CBAs between the police unions and the City have essentially turned the code of silence into an official policy. (*Id.* ¶¶ 47, 56.) According to Plaintiff, the above widespread custom or practice was deliberately indifferent to his rights secured by the United States Constitution and was the moving force behind his constitutional injuries. (*Id.* ¶ 58.)

## ANALYSIS

To recover under *Monell*, Plaintiff must eventually show that (1) he suffered a deprivation of a constitutional right; (2) as a result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional injury. *See* 🚩 *Glisson v. Indiana Dep't of Corr.,* 849 F.3d 372, 379 (7th Cir. 2017). As to the causation element, Plaintiff must offer evidence that the unconstitutional custom, policy, or practice was the "moving force" behind his constitutional injury. *See* 🚩 *Daniel v. Cook Cnty.,* 833 F.3d 728, 736 (7th Cir. 2016). At this procedural posture, however, the Court need only determine whether Plaintiff has sufficiently alleged his *Monell* claim against the City under the dictates of *Iqbal* and *Twombly. See* 🚩 *White v. City of Chicago,* 829 F.3d

837, 844 (7th Cir. 2016) (federal courts may not apply a "heightened pleading standard" to *Monell* claims).

In the present motion, the City argues that Plaintiff has failed to adequately allege his *Monell* claim because he only mentions a single incident, namely, the alleged excessive force surrounding his arrest and detention on June 6, 2016. In response, Plaintiff asserts that he can allege a failure to train claim based on his own experience without alleging other, similar violations. Indeed, the Supreme Court has left open the possibility that in a narrow range of failure to train cases, a plaintiff need not prove a pattern of similar violations to establish deliberate indifference. *See* 🚩 *Connick v. Thompson,* 563 U.S. 51, 63 (2011); 🚩 *Bd. Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 409 (1997); 🚩 *Canton v. Harris,* 489 U.S. 378, 390 n.10 (1989); *see also* 🚩 *Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F.3d 917, 929 (7th Cir. 2004) ("The Supreme Court has expressly acknowledged that evidence of a single violation of federal rights can trigger municipal liability if the violation was a 'highly predictable consequence' of the municipality's failure to act."). Outside of this exception, "*Monell* claims based on allegations of an unconstitutional municipal practice or custom—as distinct from an official policy—normally require evidence that the identified practice or custom caused multiple injuries." *Chatham v. Davis,* 839 F.3d 679, 685 (7th Cir. 2016).

That being said, the Supreme Court's discussions in *Connick, Brown, Canton,* and the Seventh Circuit's decision in *Chatham* concern proving a failure to train *Monell* claim, not pleading one. *See* 🚩 *White,* 829 F.3d at 844. In *White,* the Seventh Circuit recognized the difference in the standards for pleading a *Monell* claim based on a widespread practice or custom and proving one. In doing so, the Seventh Circuit clarified that *Monell* claims are not subject to a heightened pleading standard in the context of allegations that the CPD has a custom or practice where police officers submit arrest warrant applications without enough information to establish probable cause for arrest. 🚩 *Id.* at 839. In his complaint, the plaintiff in *White* alleged his own experience in which the officers submitted an inadequate application for his arrest warrant and also included the standard CPD form used

for arrest warrants, which on its face did not require specific factual support. *Id.* at 844. Under these circumstances, the Seventh Circuit concluded that the plaintiff had sufficiently alleged a *Monell* custom or practice claim because he alleged more than his own constitutional injury based on the attached form. *Id.*; *see also Doe v. Grosch*, No. 17 C 1214, 2017 WL 3970515, at *3 (N.D. Ill. Sept. 8, 2017).

**\*4** Here, Plaintiff has sufficiently alleged his *Monell* claim against the City by alleging factual details concerning the CPD's alleged widespread practice or custom of covering-up police officers' unconstitutional use of excessive force and that this practice was the moving force behind his constitutional injuries. In particular, not only has Plaintiff alleged his own Fourth Amendment excessive force injury, but he has also alleged that the Police Accountability Task Force Report and January 2017 DOJ Report highlight the deficiencies in relation to the CPD's use of excessive force that are sufficiently similar to Plaintiff's excessive force allegations—raising a reasonable inference that he is not alone in suffering constitutional injuries resulting from this alleged practice or custom. *See Iqbal,* 556 U.S. at 678 (a complaint is plausible on its face when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also Catinella v. Cnty. of Cook, Ill.*, 881 F.3d 514, 517 (7th Cir. 2018) ("the complaint 'must give enough details about the subject-matter of the case to present a story that holds together.' ") (citation omitted).

Moreover, despite the City's argument to the contrary, Plaintiff's allegations—read as a whole—include more than mere legal conclusions and boilerplate language. *See Catinella,* 881 F.3d at 517-18 ("[L]egal conclusions can provide the framework of a complaint so long as they are supported by factual allegations.") (internal quotation marks omitted, citation omitted). In particular, Plaintiff gives context to his *Monell* claim by explaining that Chicago Police Officers' CBAs prohibit the IPRA from properly investigating complaints of excessive force and that by delegating responsibility to the IPRA to investigate and recommend discipline of Chicago Police Officers, the City enables the "code of silence" of covering-up police misconduct involving the use of excessive force. In addition, the City's arguments that Plaintiff's allegations do not "establish" the existence of a widespread policy are misplaced because at this stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has "established" or "proven" his claims. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). For these reasons, the Court denies the City's motion to dismiss Plaintiff's *Monell* claim as alleged in Count V of the Amended Complaint.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1138553

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 14 of 38 PageID #:486

Hernandez v. City of Chicago, Not Reported in Fed. Supp. (2016)

2016 WL 6948386
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Tina HERNANDEZ, as special adm'r for
the estate of Ted W. Hernandez, Plaintiff,

v.

CITY OF CHICAGO, Officer Robert Goins, and
Unknown Chicago Police Officers, Defendants.

Case No. 16 C 8875
|
Signed 11/28/2016

**Attorneys and Law Firms**

Stephen Jay McMullen, John Coughlin Coyne, Law
Offices of John C. Coyne, Chicago, IL, for Plaintiff.

Andrew M. Hale, Avi T. Kamionski, Shneur Z.
Nathan, Hale Law LLC, Barrett Elizabeth Boudreaux,
Corporation Counsel, Liza Marie Franklin, Maria
Elizabeth Magginas, Carla Madeleine Kupe-Arion,
Tiffany Yvette Harris, City of Chicago, Department of
Law, Chicago, IL, for Defendants.

Unknown Chicago Police Officers, pro se.

## ORDER ON DEFENDANT CITY OF
## CHICAGO'S MOTION TO DISMISS

MATTHEW F. KENNELL, United States District
Judge

 **\*1**  In December 2007, Ted Hernandez was shot and
killed by Chicago police officers in what the plaintiff,
the representative of his estate, says was an unjustified
shooting. In January 2008, plaintiff filed suit against
the City of Chicago and then-unknown police officers,
asserting state law claims of battery, wrongful death,
and willful and wanton conduct arising from the
shooting. Plaintiff named the City on a theory of
respondeat superior. The case remained pending in
state court until March 2013, when plaintiff voluntarily
dismissed the case with leave to refile it. Plaintiff
refiled suit in state court in February 2014, asserting
the same or similar claims against the City, one named

police officer, and other unknown officers. In August
2016, plaintiff amended her complaint to include a
claim under 42 U.S.C. § 1983 against the City
and (it appears) the named and unnamed officers. The
claim against the City is premised on Monell v.
Department of Social Services of City of New York, 436
U.S. 658 (1978).

The City has moved to dismiss the Monell claim. It
argues that the claim is time-barred and that plaintiff
has not alleged sufficient facts to state a claim.

The parties agree that a two year limitations period
applies to the Monell claim and that question of
timeliness turns on whether the claim relates back to
the original complaint filed in January 2008. That,
in turn, depends on whether the Monell claim arises
"out of the conduct, transaction, or occurrence set
out" in the 2008 complaint. Fed. R. Civ. P. 15(c)(1)
(B). The City says that the underlying basis of its
liability is what matters and that the 2008 complaint
said nothing about any policies or practices of the City,
which is a necessary element of a Monell claim. But
both the original claims and the Monell claim arise
out of the December 2007 shooting of Hernandez.
Plaintiff says that is the relevant "conduct, transaction,
or occurrence" for purposes of Rule 15(c)(1)(B).

There is no binding authority on this issue, and neither
side has cited any cases bearing on this particular
situation. "The criterion of relation back is whether
the original complaint gave the defendant enough
notice of the nature and scope of the plaintiff's claim
that [the defendant] shouldn't have been surprised by
the amplification of the allegations of the original
complaint in the amended one." Santamarina v.
Sears, Roebuck & Co., 466 F.3d 570, 573 (7th Cir.
2006). "[T]here would be relation back if the two
complaints referred to the same general set of facts
though the amended one alleged a different cause of
action and legal theory from the amended complaint."
Id. (internal quotation marks omitted). An amendment
relates back if it "alleges events close in time and
subject matter to those previously alleged, and if they
led to the same injury." In re Safeco Ins. Co. of Am.,
585 F.3d 326, 331 (7th Cir. 2009). In Armour v.
Country Club Hills, No. 11 C 5029, 2014 WL 63850
(N.D. Ill. Jan. 8, 2014), Judge Joan Gottschall dealt

with essentially the same situation at issue here and determined that a *Monell* claim related back to an earlier complaint that named a municipality on a theory of respondeat superior (and as an indemnitor under state law, a basis essentially parallel to respondeat superior liability). Judge Gottschall, relying on several other district court decisions, found that the *Monell* claim related back because it arose from the same underlying constitutional wrong and involved the same injury as the earlier claims. This Court agrees and therefore overrules the City's argument that the *Monell* claim is time-barred.

**\*2** The Court also overrules the City's contention that the *Monell* claim does not include sufficient factual allegations. The amended complaint describes the alleged policies or practices at issue—systematic resort to deadly force when non-deadly force is appropriate, entrusting decision making authority regarding use of force to police dispatchers, and failure to train officers on how to deal with and coordinate in situations in which multiple officers have responded—in a non-conclusory way that is sufficient to put the City on notice to the claimed basis for its liability. The Court disagrees with the City's contention that plaintiff is attempting to base liability on a single incident. The complaint does not read that way, particularly when one reads it liberally, as the Court must.

For these reasons, the Court denies the City's motion to dismiss plaintiff's *Monell* claim(s) and directs the City to answer the claim(s) by no later than December 13, 2016. The case remains set for a status hearing on November 29, 2016 as previously ordered.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6948386

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 16 of 38 PageID #:488

Armour v. Country Club Hills, Not Reported in Fed. Supp. (2014)

KeyCite Yellow Flag - Negative Treatment

Distinguished by  Linder v. McPherson,   N.D.Ill.,   January 29, 2015

2014 WL 63850

Only the Westlaw citation is currently available.

United States District Court,

N.D. Illinois, Eastern Division.

Abeid ARMOUR, Plaintiff,

v.

COUNTRY CLUB HILLS, Country Club Hills

Officers John Silas (#857), Guiveda Francois

(#108), Brian Zarnowski (#819), Joseph Williams

(#814), J. Strayer (#866), Dorla Thompson

(#860), Detective Dempsey, Former Country Club

Hills Police Chief Regina Evans, and Unknown

Country Club Hills Police Officers, Defendants.

Case No. 11 C 5029

|

January 8, 2014

**Attorneys and Law Firms**

Brendan Shiller, April Dominique Preyar, Mary Johanna Grieb, Shiller Preyar Law Offices, Chicago, IL, Barbara C. Long, Randall Vogt, P.C., Portland, OR, for Plaintiffs.

Thomas R. Weiler, John Anthony Masters, Kristen Ann Cemate, Langhenry, Gillen, Lundquist & Johnson, LLC, Chicago, IL, for Defendants.

*MEMORANDUM OPINION & ORDER*

JOAN B. GOTTSCHALL, United States District Judge

 **\*1** On April 5, 2013, Abeid Armour filed a fourteen-count Third Amended Complaint against the City of Country Club Hills ("the City"), various City police officers, and former Country Club Hills Police Chief Regina Evans, [1] asserting claims pursuant to  42 U.S.C. § 1983 and state law. Armour's claims stem from an incident on July 24, 2010, during which he was shot by a police officer,

then charged with attempted murder, of which he was eventually acquitted. Now before the court are two motions. Evans moves to dismiss all claims in the Third Amended Complaint against her, pursuant to Federal Rule of Civil Procedure 12(b)(6). The City and City law enforcement officers John Silas, Guiveda Francois, Brian Zarnowksi, Joseph Williams, J. Strayer, Dorla Thompson, and Detective Dempsey (collectively, "the City Defendant officers") move to dismiss Counts 13 and 14 of the Third Amended Complaint, both of which are claims against the City pursuant to  Monell v. Department of Social Services of New York, 436 U.S. 658 (1978). For the reasons that follow, the motions are granted in part and denied in part. The court denies Evans's motion to dismiss Counts 9 and 10, but clarifies that the claims in those counts may proceed only under a *Brady* theory. Armour's claim against Evans in Count 14 is dismissed. The City's motion to dismiss Count 13 is granted, while its motion to dismiss Count 14 is denied.

**I. BACKGROUND**

For purposes of the motions to dismiss, the court accepts the following facts alleged by Armour as true. *See, e.g., Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 618 (7th Cir. 2007).* At about 1:30 a.m. on July 24, 2010, Officer Silas fired at least six bullets at Armour, two of which struck him in the side. Officer Francois was present at the shooting.

To cover up the unjustified shooting, Officers Silas and Francois concocted false charges against Armour. Prior to the initiation of any criminal charges, City Defendant officers coerced false testimony from several eyewitnesses. The officers seized six teenagers at the scene of the shooting and held them for over sixteen hours before they were interviewed. Evans was present at the police station when the witnesses were detained. She was aware that the City officers were threatening the witnesses with criminal charges unless they gave statements consistent with Officer Silas's version of events, and she encouraged them to do so.

Armour alleges that Officers Silas and Francois conspired with Evans and the other City Defendant officers to charge and prosecute him. The officers failed to investigate the shooting, included false

Armour v. Country Club Hills, Not Reported in Fed. Supp. (2014)

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 17 of 38 PageID #:489

statements in police reports, and destroyed or hid material evidence. Officer Williams wrote false reports summarizing his interview with Officer Silas the morning after the shooting. Officer Strayer failed to properly investigate the shooting and created false reports regarding his attempts to retrieve video evidence of the shooting on July 25, 2010. Officers Thompson and Dempsey interviewed Armour at the hospital on July 24, 2010, fabricated a statement which they attributed to Armour, failed to record Armour's exculpatory statements, and created false reports regarding their interview with Armour. The officers knew that their reports would be relied upon by prosecutors.

**\*2** Officer Zarnowski detained teenage witnesses and coerced them into giving false statements about the shooting, signed the coerced statements, failed to record witness statements which exculpated Armour, created false reports regarding witness statements and exculpatory evidence, created false reports about statements given by Silas and Francois, and conducted suggestive photo arrays. Officer Zarnowski interviewed Armour at the hospital on July 25, 2010, failed to record exculpatory statements by Armour, and did not stop questioning Armour when he asked for an attorney. Officer Zarnowski created false reports concerning his interview with Armour and testified based on those false reports before the grand jury and during Armour's September 2011 criminal trial.

Armour alleges that, as the City Defendant officers' supervisor, Evans encouraged them to present false reports, testify falsely to the grand jury and at Armour's trial, hide exculpatory evidence, and fail to properly investigate the charges against Armour. She did so in order to protect the City and the City Defendant officers from liability.

Relying on the officers' reports and the written statements of the witnesses, the Cook County State's Attorney's Office approved felony charges of attempted murder against Armour. Armour was formally indicted for the attempted murder of a police officer on August 17, 2010. Armour spent nearly fourteen months as a pretrial detainee at Cook County Jail. The City Defendant officers were in possession of an investigative report prepared by the Illinois State Police Public Integrity Task Force, which contained

exculpatory evidence, but they failed to turn these documents over to Armour. Armour was found not guilty of all charges against him on September 15, 2011.

Armour filed a complaint in this court on July 25, 2011. He filed a Third Amended Complaint on April 4, 2013. Based on the alleged facts summarized above, Armour asserts the following claims in the Third Amended Complaint: (1) § 1983 Excessive Force against Officer Silas; (2) § 1983 Unlawful Seizure/ False Arrest against the City Defendant officers; (3) § 1983 Failure to Intervene against Officer Francois; (4) Battery against the City; (5) Assault against Officer Silas and the City; (6) Malicious Prosecution; (7) Intentional Infliction of Emotional Distress; (8) state-law Civil Conspiracy; (9) § 1983 Civil Conspiracy; (10) § 1983 Due Process; (11) Respondeat Superior Liability against the City; (12) payment of tort judgment by the City pursuant to Illinois law; (13) a *Monell* "custom and practice" claim against the City; and (14) a *Monell* "policymaker" claim against the City and Evans.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) should be granted if Plaintiffs fail to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555–56; *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011).

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 18 of 38 PageID #:490

Armour v. Country Club Hills, Not Reported in Fed. Supp. (2014)

### III. ANALYSIS

#### A. Evans's Motion to Dismiss

The Third Amended Complaint adds Evans as an individual defendant. She moves to dismiss all claims against her in the Third Amended Complaint. In response, Armour clarifies that he has not named Evans as a defendant in Counts 2, 4, 5, 6, 7, and 8. The claims alleged against Evans are thus the 🚩 § 1983 due process and conspiracy claims in Counts 9 and 10, and the *Monell* "policymaker" claim in Count 14, which names both Evans and the City.

    1. 🚩 *§ 1983 Conspiracy and Due Process claims (Counts 9 and 10)*

 **\*3**  Count 9 of the Third Amended Complaint alleges that the City Defendant officers, "among themselves, and with Defendant Evans, ... formed an agreement to falsely arrest and illegally seize Plaintiff in violation of his constitutional rights and deprive Plaintiff of his right to a fair trial." (Third Am. Compl. ¶ 85.) Count 10 alleges a violation of the Due Process Clause pursuant to 🚩 § 1983. It is well-established that "conspiracy is not an independent basis of liability in 🚩 § 1983 actions." 🔺 *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008). Rather, a conspiracy claim depends upon an underlying constitutional violation. The court must therefore determine whether Armour has alleged an underlying violation that can support a 🚩 § 1983 conspiracy claim against Evans.

The conspiracy claim against Evans is time-barred insofar as it is based on Armour's alleged false arrest. The applicable statute of limitations for a 🚩 § 1983 claim in Illinois is two years. *Woods v. Ill. Dep't of Children and Family Servs.,* 710 F.3d 762, 768 (7th Cir. 2013). Armour's false arrest claim accrued when he knew of his injury and had the ability to file a lawsuit about the injury. 🚩 *Savory v. Lyons,* 469 F.3d 667, 672 (7th Cir. 2006); *see also* 🚩 *Wallace v. Kato,* 549 U.S. 384, 388 (2007) (explaining that a plaintiff "could have filed suit as soon as an allegedly wrongful arrest occurred ..., so the statute of limitations would

normally commence to run from that date"). Armour was indicted by a grand jury in August 2010, but he did not file a complaint against Evans until April 5, 2013, more than two years later.

As alleged, however, the conspiracy claim is based not just on false arrest, but on due process violations. Those alleged violations also form the basis of Count 10. Armour alleges that the defendants fabricated evidence that led to his prosecution. He also alleges that the defendants suppressed exculpatory evidence material to the decision to prosecute him for first-degree murder. Those claims did not accrue at the time of Armour's arrest, but at the time of his acquittal on September 15, 2011, and are therefore timely.

Insofar as the due process and conspiracy claims in Counts 9 and 10 are based on evidence fabrication, they do not state federal due process claims. A claim of evidence fabrication may proceed only as a state-law malicious prosecution claim. The Seventh Circuit has rejected plaintiffs' arguments that evidence fabrication by police officers violates the Due Process Clause as improper attempts at "shoe-horning" Fourth Amendment and malicious prosecution claims "into the more general protections of the Fourteenth Amendment." 🚩 *Fox v. Hayes,* 600 F.3d 819, 841 (7th Cir. 2010) (citing 🚩 *Brooks v. City of Chi.,* 564 F.3d 830, 833 (7th Cir. 2009), and 🚩 *McCann v. Mangialardi,* 337 F.3d 782, 786 (7th Cir. 2010)). And the Seventh Circuit does not recognize federal malicious prosecution claims where state tort law supplies a similar cause of action. 🚩 *Newsome v. McCabe,* 256 F.3d 747, 750 (7th Cir. 2001) ("The existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution."). Thus, a plaintiff "cannot invoke the substantive due process clause where state laws provide an adequate postdeprivation remedy for the complained-of conduct." 🚩 *Fox,* 600 F.3d at 841.

Armour argues that he has also pleaded a due process violation under 🚩 *Brady v. Maryland,* 373 U.S. 83 (1963), based on the suppression of exculpatory and impeaching evidence material to the decision to prosecute him. Under *Brady,* the government violates the Due Process Clause when it "fails to

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 19 of 38 PageID #:491

Armour v. Country Club Hills, Not Reported in Fed. Supp. (2014)

disclose evidence materially favorable to the accused."

🚩 *Mosley v. City of Chi.,* 614 F.3d 391, 397 (7th Cir. 2010) (citing 🚩 *Youngblood v. West Virginia,* 547 U.S. 867, 869 (2006)). The duty to disclose "extends to the police and requires that they similarly turn over exculpatory ... evidence to the prosecutor."

🚩 *Carvajal v. Dominguez,* 542 F.3d 561, 566 (7th Cir. 2008) (citing 🚩 *Youngblood,* 547 U.S. at 870). The elements of a *Brady* violation are: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, 'materiality.' "

🚩 *Id.* at 566–67. Evidence is "suppressed" where it is not disclosed "in time for the defendant to make use of it," and it "was not otherwise available to the defendant through the exercise of reasonable diligence." 🚩 *Id.* at 567. "[F]avorable evidence is material ... if there is a 'reasonable probability' that, had the evidence been disclosed ... the result of the proceeding would have been different." 🚩⚠️ *Bielanski v. Cnty. of Kane,* 550 F.3d 632, 643–44 (7th Cir. 2008) (internal quotation marks omitted).

 **\*4** Evans argues that Armour has not stated a *Brady* claim because he has not identified with the requisite specificity what exculpatory evidence was allegedly concealed by the defendants. The court concludes, however, that at this stage in the proceedings, Armour's allegations about the City Defendant officers' false testimony, coerced witness statements, and failure to provide documents are sufficient to state a *Brady* claim. Allegations that officers created false evidence, such as by creating false written reports and inducing witnesses to falsely identify a defendant, state a viable *Brady* claim when the evidence is withheld from a criminal defendant. *See, e.g.,* 🚩 *Engel v. Buchan,* 710 F.3d 698, 709–10 (7th Cir. 2013).

Evans further argues that Armour cannot, as a matter of law, allege that he was prejudiced as a result of the alleged suppression of evidence, because he was acquitted of the charges against him. Evans points out that every circuit court that has squarely decided the issue has held that a defendant who was acquitted cannot maintain a *Brady* claim. The court acknowledges this trend. *See, e.g.,* 🚩 *Morgan v. Gertz,* 166 F.3d 1307, 1310 (10th Cir. 1999) (finding no *Brady* liability because "a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial"); 🚩 *Flores v. Satz,* 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff, however, was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of *Brady*."); ⚠️ *McCune v. City of Grand Rapids,* 842 F.2d 903, 907 (6th Cir. 1988) ("Because the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence."); *cf.* 🚩 *Taylor v. Waters,* 81 F.3d 429, 435–36 (4th Cir. 1996) (holding that no settled authority established the illegality of an officer's conduct in withholding exculpatory evidence from a plaintiff who was not convicted); *but see* 🚩 *Smith v. Almada,* 640 F.3d 931, 940–41 (9th Cir. 2011) (Gould, J., concurring) (declining to decide whether a conviction is a prerequisite to a *Brady* claim).

Our circuit has not decided whether a *Brady* claim is viable when the plaintiff's trial resulted in an acquittal.

*See* 🚩 *Mosley,* 614 F.3d at 397–98 (reserving the question "for a later case" in which the evidence withheld "would have altered the decision to go to trial"). Recently, in *Alexander v. McKinney,* the court stated:

> [W]e have expressed doubt that an acquitted defendant can ever establish the requisite prejudice for a Brady claim. *See* [ 🚩⚠️ *Bielanski,* 550 F.3d at 644]. Nevertheless, we have entertained the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial. *See* [ ⚠️ *Parish v. City of Chi.,* 594 F.3d

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 20 of 38 PageID #:492

Armour v. Country Club Hills, Not Reported in Fed. Supp. (2014)

551, 554 (7th Cir. 2009) ];
⚑⚠ *Bielanski,* 550 F.3d at
644–45.

⚑ 692 F.3d 553, 556 (7th Cir. 2012); *see also Petrishe v. Tenison,* No. 10 C 7950, 2013 WL 5645689, at *4 (N.D.Ill. Oct. 15, 2013) (Holderman, J.) (concluding that plaintiff sufficiently alleged the existence and suppression of exculpatory evidence that would have altered the decision to go to trial).

In other words, a plaintiff may have a "*Brady*-type due process claim" where favorable evidence is suppressed by the government, and " 'there is a reasonable probability that prejudice ensued.' " ⚑⚠ *Parish,* 594 F.3d at 554 (quoting ⚑ *Carvajal,* 542 F.3d at 566–67). Although the Seventh Circuit has not squarely held as such, it has suggested that "prejudice" may include situations in which the government's decision to go to trial was altered by the suppression of the evidence. *Id.* Thus, at present, our circuit's case law does not foreclose Armour from arguing that the proceedings in his case were prolonged by the defendants' actions, in violation of his due process rights. In the absence of binding authority from the Seventh Circuit, this court will not dismiss the claim. The court expresses no opinion on Armour's ultimate ability to show that the prosecution would not have moved forward with the charges against him were it not for the defendants' withholding of evidence. But he has sufficiently alleged, to overcome a motion to dismiss, that the defendants' actions were material to the decision to prosecute him. The court therefore denies Evans's motion to dismiss Counts 9 and 10, but clarifies that the claims in those counts may proceed only under a *Brady* theory.

#### 2. *Monell* "Policymaker" Claim (Count 14)

**\*5** Armour names Evans as a defendant in Count 14 of the Third Amended Complaint, which alleges that she was a "final policy maker" for the County Club Hills Police Department. (Third Am. Compl. ¶ 115.) Evans asks the court to dismiss the claim against her, arguing that a *Monell* claim may proceed only against a municipality. In his response, Armour clarifies that Count 14 names Evans in her official capacity. That,

however, makes the claims against Evans and those against the City redundant, and the court therefore dismisses the claim against Evans in Count 14. *See, e.g.,* ⚑ *Jungels v. Pierce,* 825 F.2d 1127, 1129 (7th Cir. 1987) (explaining that "nothing was added" by suing a mayor in his official capacity along with the city).

#### B. The City's Motion to Dismiss

The Third Amended Complaint adds two counts against the City pursuant to ⚑ § 1983 and *Monell.* As a municipality, the City can be held liable under ⚑ § 1983 only if the alleged constitutional violations resulted from the execution of one of its policies. *See* ⚑ *Monell,* 436 U.S. at 694. This may be established by alleging: (1) an express policy that caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a policy; or (3) that the constitutional injury was caused by a person with final policymaking authority. ⚑ *Lewis v. City of Chi.,* 496 F.3d 645, 656 (7th Cir. 2007). Count 13 of the Third Amended Complaint alleges that the City "had a custom and practice of encouraging Defendant officers to cover up excessive force, falsify sworn police reports, falsify testimony, and threaten witnesses." (Third Am. Compl. ¶ 111.) Count 14 alleges that the underlying constitutional violations committed by the City Defendant officers "were possible ... because of the authority of final policy maker, Defendant Evans, Chief of Police, who encouraged and directed" the City Defendant officers' conduct." (*Id.* at ¶ 115.) The City has moved to dismiss both counts.

##### 1. *Statute of Limitations*

The City first argues that both of Armour's *Monell* claims are time-barred because they arose at the time of Armour's arrest in 2010, but were not raised until the Third Amended Complaint was filed on April 5, 2013. At least some of the allegations in Counts 13 and 14 are based on the City Defendant officers' alleged false arrest of Armour and use of excessive force. As discussed above, those claims accrued when Armour knew of his injury and had the ability to file a lawsuit about the injury. ⚑ *Savory,* 469 F.3d

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 21 of 38 PageID #:493

Armour v. Country Club Hills, Not Reported in Fed. Supp. (2014)

at 672; *Wallace, 549 U.S. at 388.* Under the two-year statute of limitations for § 1983 actions in Illinois, Armour's *Monell* claims based on false arrest and excessive force are untimely.

To avoid dismissal of the claims, the amended complaint must relate back to an earlier complaint, pursuant to Federal Rule of Civil Procedure 15(c)(1). The rule requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

The court concludes that Armour's *Monell* claims relate back to the allegations in his earlier complaint, for purposes of the statute of limitations. The *Monell* claims "arose out of the conduct, transaction, or occurrence" that formed the basis for the earlier claims —Armour's arrest—and thus satisfy the plain language of the Rule. Fed. R. Civ. P. 15(c)(1)(B). The Third Amended Complaint essentially repeats the allegations presented in Armour's earlier complaints, such as the Amended Complaint filed on January 23, 2013 (i.e., within the limitations period). The City was named as a defendant in that complaint, under a theory of *respondeat superior* liability and in an indemnification count. The Amended Complaint included allegations of false arrest and excessive force against the City Defendant officers. Thus, in the operative complaint, Armour has added a new claim against the City based on the same underlying constitutional violations previously alleged.

**\*6** Furthermore, the court's research indicates that most courts presented with similar facts have concluded that a *Monell* claim relates back to a complaint alleging the same underlying constitutional injury to the plaintiff. *See, e.g., Triano v. Town of Harrison, NY,* 895 F.Supp.2d 526, 530 (S.D.N.Y.2012); *Nash v. Kressman,* No. 11 Civ. 7327(LTS)(RLE), 2013 WL 6197087, at \*8 (S.D.N.Y. Nov. 27, 2013); *Henry v. City of New York,* No. CV–07–3965, 2008 WL 906743, at \*4 (E.D.N.Y. Apr. 1, 2008) ("[T]he City is already a party to this action and on notice that plaintiff has claims against it arising from the alleged facts."); *Overton v. Se. Penn. Transp. Auth.,* No. Civ. A. 04–904, 2004 WL 1243666, at \*3 (E.D. Pa. June 3, 2004)

("Plaintiff's *Monell* claim in [an amended complaint] clearly arises out of the same incident that is the subject of the Original Complaint."); *Estate of Keys v. City of Harvey,* No. 92 C 2177, 1994 WL 687479, at \*3–4 (N.D.Ill.Dec. 8, 1994). The court therefore declines to dismiss Armour's *Monell* claims based on the alleged underlying injuries of excessive force and false arrest as barred by the statute of limitations.

### B. *Sufficiency of the Pleadings*

The City further argues that the allegations in Counts 13 and 14 are insufficient to state a *Monell* claim. According to the City, Count 13 alleges only that the Country Club Hills Police Department failed to train the City Defendant officers to truthfully complete police reports and encouraged them to lie to cover up misconduct. It argues that under the pleading standards set out in *Twombly* and *Iqbal,* these conclusory allegations are too vague to state a claim based on an allegedly widespread custom or practice.

The court reads the complaint as a whole and must view it in the light most favorable to Armour. Count 13 refers to the constitutional violations allegedly committed against Armour, as set out in the rest of the complaint. The City does not contest the sufficiency of Armour's underlying false arrest and excessive force claims, and the court has already held that his allegations suffice to state a *Brady*-type due process claim. In addition to the allegations about the City Defendant officers' actions toward him, Armour alleges that the City "had a custom and practice of encouraging Defendant officers to cover up excessive force, falsify sworn police reports, falsify testimony, and threaten witnesses." (Third Am. Compl. ¶ 111.) He further alleges:

112. At all times material to this complaint, Defendant Country Club Hills's Police Department, had interrelated de facto policies, practices, and customs which included:

a. the failure to properly train Defendant Officers on truthfully completing sworn police reports, which Defendant Country Club Hills, Defendant Officers, and Defendant Evans [knew] would be used in criminal proceedings.

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 22 of 38 PageID #:494

Armour v. Country Club Hills, Not Reported in Fed. Supp. (2014)

b. the failure to properly supervise, discipline, monitor, counsel, and otherwise control police officers in the use of firearms, particularly those who are repeatedly accused of excessive force, and the detention of witnesses who were not accused of any crime.

c. a Department-wide custom of encouraging officers and Defendant Evans to lie to cover up excessive force, false arrests, and other unconstitutional misconduct, in order to protect the City and the Defendant officers from civil and criminal liability;

d. failure to train Defendant Officers to use less means of force when attempting to arrest and restrain individuals;

(*Id.* at ¶ 112.) Armour also alleges that the City was deliberately indifferent to the consequences of these practices. (*Id.* at ¶ 114.)

The City is correct that a plaintiff must plead some specific facts supporting a claim that a municipality maintained a policy, custom or practice that caused a constitutional deprivation. *See* 🔖 *McCauley v. City of Chi.,* 671 F.3d 611, 616 (7th Cir. 2011). Moreover, "[a] single isolated incident of wrongdoing by a nonpolicymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." *Cornfield v. Consol. High Sch. Dist. No. 230,* 991 F.2d 1216, 1326 (7th Cir. 1993). Armour's complaint includes a great deal of conclusory language about "interrelated policies, practices, and customs." (Third Am. Compl. ¶ 113.) The court disregards these conclusory legal statements. 🔖 *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009). Courts in this district, however, have allowed *Monell* claims to proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." 🔖 *Riley v. Cnty. of Cook,* 682 F.Supp.2d 856, 861 (N.D. Ill. 2010).

*\*7* Here, Armour has pleaded the facts related to his own injury and then alleged that the City failed to properly train and supervise its officers with regard to the use of force, the completion of reports, and the collection of evidence. He contends that this is sufficient to alert the City to its alleged wrongdoing. The court disagrees. The problem with Armour's allegations is that they encompass virtually all the activities of a police department and every contact it has with the public. Armour has lumped together myriad "customs" and "policies," and the scope of the discovery relevant to his claims is boundless. The allegations are in no way tailored to identify particular police training procedures or policies. In other words, discovery relevant to Armour's allegations would be the epitome of a fishing expedition. *See* 🔖 *Brooks,* 578 F.3d at 581 ("[S]ome factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim."). Because Armour has failed to plead a *Monell* "custom and practice" claim, the court grants the City's motion to dismiss Count 13 of the Third Amended Complaint. The dismissal is without prejudice because it is possible that the flaw in the claim can be cured.

*See* 🔖 *Bogie v. Rosenberg,* 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible.").

Count 14 asserts a *Monell* "policymaker" claim, based on Evans's direction of the City Defendant officers to commit the acts that allegedly caused Armour's constitutional injuries. Under such a theory, 🔖 § 1983 liability attaches only where "a deliberate choice to follow a course of action is made ... by the official or officials responsible for establishing final policy with respect to the subject matter in question." 🔖 *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986). Armour alleges that Evans "was the person with final policymaking authority" for the police department. (Third Am. Compl. ¶ 116.) The court, however, disregards boilerplate allegations that Evans was a "policymaker" or that she made "policy."

*See* 🔖 *McCauley,* 671 F.3d at 618. Armour further alleges that the City's Municipal Code granted Evans "authority over all personnel, policies, and direction of the members of the Country Club Hills Police Department. (Third Am. Compl. ¶ 117.)

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 23 of 38 PageID #:495

Armour v. Country Club Hills, Not Reported in Fed. Supp. (2014)

The City argues that Evans was not a final policymaker for the City of Country Club Hills. Rather, the City Council had the authority to establish policies for the City. But the question before the court at this stage in the proceedings is not whether Evans actually was a final policymaker for the City, but only whether Armour has sufficiently alleged that she had such authority to allow him to proceed with his claim. Even if the City Council, acting through ordinances, could constrain the authority of the City's Chief of Police, it is plausible that Evans exercised at least *de facto* authority with respect to the conduct at issue. The court therefore denies the City's motion to dismiss the *Monell* "policymaker" claim in Count 14. Ultimately, to determine whether Evans was a policymaker for the City, the court will have to consider whether her decisions were constrained by policies of other officials, subject to review (by, for example, the City Council), and within the scope of her delegated authority. *See Valentino v. Vill. of S. Chi. Heights, 575 F.3d 664, 676 (7th Cir. 2009).*[2]

## IV. CONCLUSION

For the reasons stated above, the court denies Evans's motion to dismiss Counts 9 and 10, but clarifies that the claims in those counts may proceed only under a *Brady* theory. Armour's claim against Evans in Count 14 is dismissed. The City's motion to dismiss Count 13 is granted; the dismissal is without prejudice, provided that Armour files a motion to amend the complaint within 21 days of this order. The City's motion to dismiss Count 14 is denied.

**All Citations**

Not Reported in Fed. Supp., 2014 WL 63850

## Footnotes

1     Armour's claims against Cook County and Assistant State's Attorney Sylvie Manaster were previously dismissed pursuant to an agreement between the parties.

2     This claim must proceed under the third prong of *Monell*. Discovery on the claim should be limited to evidence relevant to whether Evans was vested with final policymaking authority. In other words, broad discovery intended to uncover "customs and practices" of the City is not warranted on the basis of the claim.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 818261
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Lillian L. MOSELY, individually and in behalf
of her minor son Melvin JACKSON, Plaintiff,
v.

CITY OF CHICAGO; Board of Education of the
City of Chicago; Sharon Grissett; Laura Lozada;
Mrs. Atkins; and Dean Thompson, Defendants.

No. 03 C 4915.
|
March 21, 2008.

**Attorneys and Law Firms**

Michael Otto Vates, Maccabe & McGuire, Chicago,
IL, for Plaintiff.

Kathleen Marie Gibbons, Ruth M. Moscovitch,
Jennifer Y. Wu, Sabrina Louise Haake, Board of
Education of the City of Chicago, Department of Law,
Sherri Thornton, Shefsky & Froelich, Chicago, IL,
Rohit Sahgal, Sahgal Law Office, Oak Brook, IL, for
Defendants.

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge.

**\*1** Lillian Mosely, acting on behalf of herself and
her minor son Melvin Jackson, has sued the City of
Chicago, the Chicago Board of Education, and four
Board employees under 🚩 42 U.S.C. § 1983 and state
law. The individual defendants have moved to dismiss
Mosely's amended complaint for failure to state a claim
pursuant to Federal Rule of Civil Procedure 12(b)
(6). For the reasons stated below, the Court dismisses
Mosely's claims made on Melvin's behalf but denies
defendants' motion with respect to her claims made on
her own behalf.

**Introduction**

On July 16, 2003, Mosely filed a *pro se* suit against
a defendant she named as "Chicago Public Schools,
Board of Education." She alleged that she had been
elected "IASA chairperson" for Samuel Gompers
Elementary School-a reference to the Improving
America's Schools Act, Pub.L. No. 103-382-but that
school administrators froze her out from any role in
the school budgeting process during the 1999-2000
and 2000-2001 school years despite her efforts to
be involved in that process, as her status as IASA
chairperson apparently required. Mosely alleged that
after she complained about this, school officials
retaliated against her and her son Melvin, who was a
student at the school, in September-November 2000.
In fact, she alleged, an official had made an implied
threat to do exactly that a few months earlier, in June
2000. As a result of the harassment, Mosely claimed,
she suffered a nervous breakdown in June 2000.

On September 16, 2003, the Board of Education filed
an initial motion to dismiss, arguing that Mosely's
claim was pled too vaguely to satisfy the requirements
of the Federal Rules of Civil Procedure. The Court
denied this motion on September 23, 2003 after
making inquiry of Mosely in open court regarding the
basis for her claim. The Court understood Mosely to
be claiming that Melvin had been retaliated against for
Mosely's exercise of her free speech rights under the
First Amendment.

The Board then filed a second motion to dismiss
on October 14, 2003, arguing that because Mosely
had not alleged any retaliation after November 2000,
her claim was time-barred because it was not filed
within two years of that date. After Mosely filed a
response and the Court heard oral argument, the Court
dismissed the case in an order dated October 24,
2003. In that order, the Court again noted that it had
previously understood Mosely's claim to involve the
alleged retaliation against Melvin. At oral argument on
October 20, 2003, however, Mosely had advised the
Court that she had a separate lawsuit in which she had
made a claim on Melvin's behalf. As a result, this Court
stated that it would treat the present case as alleging
only retaliation against Mosely herself. *Mosely v. Bd.*

*of Educ.,* Case No. 03 C 4915, Order of Oct. 24, 2003 at 2.

The Court went on to say in its October 24, 2003 order that if the present suit were based on the alleged retaliation against Melvin, it would be time-barred, because the complaint alleged that retaliation had occurred, at the latest, in November 2000, well more than two years before she filed suit in July 2003. But setting that aside-based on the fact that the claimed retaliation against Melvin was the subject of a separate suit-the Court concluded that Mosely was left with nothing to go on that would sustain a claim. With regard to retaliation directed at Mosely herself rather than at Melvin, Mosely claimed only that she was frozen out of the budgetary process at the school; the Court concluded that this was not sufficiently adverse to amount to actionable retaliation for her exercise of her First Amendment rights. The Court therefore dismissed the case. *Id.*

**\*2** Mosely appealed, and the Seventh Circuit appointed counsel to represent her. The appeal was consolidated with Mosely's separate appeal from another judge's dismissal of her separately-filed suit on Melvin's behalf. A little over two years after this Court had dismissed Mosely's case, the Seventh Circuit reversed both dismissal orders. 🔖 *Mosely v. Bd. of Educ. of City of Chicago,* 434 F.3d 527 (7th Cir.2006). With regard to the present case, the court concluded that the actions Mosely alleged did amount to actionable retaliation. On the limitations issue, the court of appeals stated as follows:

Apart from the fact that the statute of limitations is ... an affirmative defense, there are other problems with the district court's conclusion that her retaliation action was untimely. Even if the incidents relating to Melvin occurred more than two years before she filed this case, Mosely's complaint recounted other incidents of harassment that took place within the two-year time limit. In response to the court's question, "through what period of time do you contend that your son was being harassed," Mosely responded "up until I took him out the school." That date was September 18, 2001. To the extent that her claim is based on incidents that occurred between July 16, 2001, and September 18, 2001, it is not

time-barred, because she filed her complaint on July 16, 2003.

We do not exclude the possibility that discovery may reveal that Mosely is unable to prove that acts of harassment took place within that critical window of time. She has alleged, however, that they did, and that is enough for purposes of Rule 12(b)(6).

*Id.* at 535.

Following remand, the attorney who had been appointed to represent Mosely on appeal remained in the case in an effort to settle it. When this proved unsuccessful, that attorney withdrew, and Mosely (at her request) was given time to retain new counsel. Retained counsel first appeared on Mosely's behalf in September 2006. Counsel filed an amended complaint about a month later, with the plaintiff identified as Mosely "individually and in behalf of her minor son, Melvin Jackson," and naming as defendants the City of Chicago, the Board, and four individuals: Sharon Grissett, Laura Lozada, "Mrs. Atkins," and Dean Thompson. The amended complaint identified Grissett as the principal of Gompers during the relevant period; Lozada and Atkins as teachers at Gompers; and Thompson as a Board employee working in administration.

In late October 2006, the Board filed a motion to dismiss; the other defendants had not yet been served with summons. It argued that Mosely's claims on her own behalf were time-barred based on the allegations in the amended complaint and that her claims on Melvin's behalf were likewise time-barred or alternatively were barred by the doctrine of claim preclusion based on the determination by the judge in the previous separately-filed case that administrative exhaustion requirements had not been met. In November 2006, the Court set a briefing schedule on the Board's motion. Mosely's response brief was somewhat delayed. The Court ultimately denied the motion to dismiss on March 12, 2007, concluding that the claim preclusion argument was lacking in merit, and declining to dismiss the case on limitations grounds, because Mosely had invoked the "continuing violation" doctrine, and the Court was unable to determine the matter on a Rule 12(b)(6) motion. *Mosely v. City of Chicago,* No. 03 C 4915,

Order of Mar. 12, 2007 at 2. The Board thereafter answered the complaint.

 **\*3** At the next court date, in late March 2007, the Court ascertained that the individual defendants had not yet been served with summons. The Court extended the time for service more than once, and all the defendants were eventually served by June 2007. They filed motions to dismiss in late July 2007.

Starting in or around May 2007, a pattern developed of inaction by plaintiff's retained counsel, including more than one missed court date. In October 2007, plaintiff's attorney moved to withdraw, saying that Mosely owed her money and advising the Court that this had been the reason for her earlier inaction. The Court granted counsel's motion and, after Mosely was unable to retain new counsel, determined to appoint counsel for her. New counsel first appeared in late November 2007. The motion to dismiss is now fully briefed and ready for decision.

The Board has answered Mosely's amended complaint. In their motion to dismiss, the individual defendants argue that the amended complaint, filed in October 2006, does not relate back to the date the lawsuit was originally filed and that as a result the claims against them are time-barred. They argue alternatively that even if the amended complaint relates back, the suit was time-barred when it was first filed. Finally, they argue that Mosely's claims on Melvin's behalf are barred due to failure to exhaust administrative remedies. (The City of Chicago, named as a defendant, has never been served; the claims against the City are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).)

### Discussion

#### 1. Relation back

The first question involves relation back. Federal Rule of Civil Procedure 15(c)(1) provides in relevant part that

> [a]n amendment to a pleading relates back to the date of the original pleading when:

> ...

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

>  (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

>  (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1). There is no question that the requirements of Rule 15(c)(1)(B) have been satisfied, as the amended complaint asserts claims arising out of the same conduct set out in Mosely's original *pro se* complaint. Because new parties were added via the amendment, however, the critical question is whether the other criteria of Rule 15(c)(1)(C) have been satisfied. The individual defendants argue that there was no "mistake" concerning the proper parties' identity within the meaning of Rule 15(c)(1)(C)(ii) and that they did not have "notice" within the meaning of Rule 15(c)(1)(C)(i).

 **\*4** Mosely argues that she made a mistake within the meaning of the Rule because, as a *pro se* plaintiff, she did not realize that suing the Board was insufficient and that she also (or, perhaps, instead) had to sue the individual Board employees involved. Defendants argue that this is not a mistake within the meaning of the Rule. They rely on a recent Seventh Circuit case in which that court said that Rule 15(c)(1) " 'permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where ... there is a lack of knowledge of the proper party.' " Hall v. Norfolk Southern Ry. Co., 469 F.3d 590, 596 (7th Cir.2006) (quoting Wood v. Worachek, 618 F.2d 1225, 1225 (7th Cir.1980)).

Mosely relies on *Woods v. Indiana Univ.-Purdue Univ. at Indianapolis,* 996 F.2d 880 (7th Cir.1993), in which the plaintiff argued that "mistakes" under Rule 15(c) include mistakes of law. *Id.* at 887. In that case, the plaintiff had sued a state university, which the district court found was immune under the Eleventh Amendment. The plaintiff then named individual officials of the university and argued that the amended complaint should relate back to the date suit was originally filed. The court concluded that the naming of the agency amounted to a mistake of law that triggered Rule 15(c) and remanded the case to the district court for further consideration of the "notice" issue under the Rule. *Id.* at 887-88. On that point, the court said that the notice requirement "serves as the means for evaluating prejudice" to the newly-named defendant. *Id.* at 888.

Not cited by either party, but relevant to the Court's analysis, is the Seventh Circuit's decision in *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548 (7th Cir.1996). In *Donald,* a *pro se* prisoner in the Illinois Department of Corrections sued the Cook County Sheriff's Department for damages regarding his treatment at the Cook County Jail. The district court dismissed the suit because the plaintiff failed to name the individual officials involved and there were no allegations sufficient to render the Sheriff's Department liable under 42 U.S.C. § 1983 and *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The court of appeals reversed, relying in part on a document the plaintiff had filed that the court construed as an attempt to amend his complaint to name individual defendants, some of whom he identified by name and some of whom he identified only by position and other identifying information. In discussing that document, the court effectively ruled that it amounted to an amendment of the complaint and that it related back under Rule 15(c). The court read *Woods* to hold that "[a] legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule [15(c)(1) ], and public officials are charged with the knowledge that they are the appropriate targets of Section 1983 suits. Thus, if Donald had identified and served

the appropriate individual defendants before the 120-day period expired, his amendment would easily have satisfied Rule 15(c)." *Id.* at 557 (citation omitted). The court remanded the case for further consideration of the "notice" issue under Rule 15(c), suggesting that the district court permit reasonable discovery to determine whether and when any of the individual officers allegedly responsible for the tort " 'received such notice of [Donald's] suit against [the Sheriff's Department] as will avoid prejudice to the officers in maintaining the suit.' " *Id.* at 561 (quoting *Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 37 (2d Cir.1996)).

**\*5** In *Hall,* the Seventh Circuit's 2006 decision upon which defendants rely, the Court discussed both *Donald* and *Woods.* The court stated that the holding in *Donald* "has limited application ... because the decision was reached in large part because of Donald's unique impairments as a *pro se* prisoner who was 'precluded from conducting a precomplaint inquiry because of his incarceration.' " *Hall,* 469 F.3d at 597 (quoting *Donald,* 95 F.3d at 561). In *Hall,* by contrast, the plaintiff "has been represented by counsel throughout and obviously was not burdened by litigation impairments comparable to those of *pro se* prisoners." *Id.* The court noted that *Woods,* unlike *Donald,* did not involve an incarcerated *pro se* litigant, but it characterized *Woods* as "an outlier," noting that the court's more recent decisions "have not followed its reasoning and have instead coalesced around the narrower view of a Rule [15(c) (1) ] 'mistake' which we trace back at least as far as *Wood,* 618 F.2d at 1229. We reaffirm and follow these more recent decisions regarding the scope of Rule [15(c)(1) ]." *Hall,* 469 F.3d at 597-98 (citations omitted).

In the text of her original *pro se* complaint, Mosely mentioned, by name, three of the individual defendants-Lozada, Grissett, and Thompson-accusing them of having been involved in the alleged freeze-out and other retaliation. *See* Compl. ¶¶ 6, 9, 10, 11 & 12. She did not mention defendant Atkins by name, but it is likely that she was referring to conduct that she attributes to Atkins, allegedly Melvin's teacher, when she referred to write-ups and suspensions imposed on Melvin. *See id.* ¶¶ 15, 16, 18 & 20.

In failing to name these persons as defendants in the caption of her original complaint, Mosely made a mistake similar to the one made by the represented litigant in *Woods* and identical to the one made by the *pro se* prisoner in *Donald*-she did not understand that the law required her to sue the individuals responsible for the alleged wrongdoing. [1] If Mosely had been represented at the time of her original complaint, under *Hall* 's limitation of *Woods,* her mistake would not fall within the scope of Rule 15(c)(1). By contrast, if she had been *incarcerated* at the time, her mistake would fall within the scope of the Rule, given *Hall* 's apparent reaffirmation of *Donald.* But Mosely falls somewhere between the represented litigant in *Woods* and the incarcerated litigant in *Donald:* she was unrepresented, but she was not incarcerated.

The Court concludes that Mosely, as an unrepresented *pro se* litigant, falls within the limited category of litigants who, even after *Hall,* may be considered to have made a mistake within the meaning of Rule 15(c)(1) when they sue an institutional defendant rather than named individuals who work for that institution. Though Mosely was not incarcerated, she suffered from the same disadvantages comparable to those of the plaintiff in *Donald*-lack of knowledge of the law, and lack of readily available access to sources that would have disclosed what the law required in this regard (indeed, as an incarcerated prisoner, Donald likely had a law library at hand, probably with attendants who could point him in the right direction; in some ways it can be more difficult for an unincarcerated *pro se* litigant to access such materials). The Court also notes that had it dealt properly with the case in the first instance-that is, by declining to dismiss it and by appointing counsel-the problem likely would have been cleared up almost immediately. For these reasons, the Court concludes that Mosely, like the plaintiff in *Donald,* has shown a mistake within the meaning of Rule 15(c)(1)(C)(ii).

**\*6** The other issue involves whether the "notice" requirement of Rule 15(c)(1)(C)(i) has been met. In that regard, the Court believes the appropriate course is the one prescribed by the Seventh Circuit in *Donald:* allowing discovery to proceed so that the parties can produce and obtain evidence concerning the notice issue, and then revisiting that point later in the case. [2]

### 2. Statute of limitations

The individual defendants argue that even if the amended complaint relates back to July 16, 2003, the date Mosely filed her original complaint, it is time-barred. Though the Court has a hard time seeing how this argument can be distinguished from the one that the Seventh Circuit rejected on appeal, the Court nonetheless will address the point.

Each defendant contends that the last act that he or she is alleged to have committed occurred more than two years before July 16, 2003. Grissett and Atkins say that the last allegation identifying them involves an April 10, 2001 incident; Thompson says the last allegation about him involves May 6, 2000; and Lozada says the last allegation about her involves a May 2, 2000 incident. Each defendant argues that the statute started to run, as to a particular defendant, on the date of the last act he or she is claimed to have done.

The first problem with defendants' arguments-one that the court of appeals hinted at-is that the statute of limitations is an affirmative defense. *See* Fed.R.Civ.P. 8(c); *see also, e.g.,* ⚑ *U.S. Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 626 (7th Cir.2003). Because "[c]omplaints need not anticipate or attempt to defuse potential defenses," *id.,* it is generally inappropriate to dismiss a case on limitations grounds on a Rule 12(b)(6) motion (contrary to what this Court effectively did when Mosely's case was first filed).

Dismissal under Rule 12(b)(6) on limitations grounds still might be appropriate were it indisputable from Mosely's complaint that her claim is time-barred. *See, e.g., Small v. Chao,* 398 F.3d 894, 898 (7th Cir.2005). But that is not the case. Among other things, Mosely essentially alleges that the defendants acted in concert in a campaign of harassment, and that this lasted until Melvin was removed from Gompers in September 2001, a date well within the two years preceding the filing of Mosely's original complaint. *See* Am. Compl. ¶ ¶ 26, 55, 60, 61 & 68. Given the potential applicability of the continuing violation doctrine, which applies to claims under ⚑ § 1983, *see* ⚑ *Heard v. Sheahan,* 253 F.3d 316, 318-20 (7th

Cir.2001), dismissal under Rule 12(b)(6) would be inappropriate.

### 3. Purported IDEA claims

The individual defendants, like the Board of Education in its earlier motion to dismiss, say that Mosely's claims made on behalf of Melvin amount to claims seeking relief under the Individuals with Disabilities Education Act (IDEA). With this as their premise, the defendants argue that the claims are barred because Mosely failed to exhaust IDEA-prescribed administrative remedies, a conclusion that Judge Suzanne Conlon reached on remand in Mosely's separately-filed *pro se* suit for Melvin that defendants contends is binding on Mosely here.

 **\*7** The Court first summarizes the allegations in the amended complaint relating specifically to Mosely's claims made on behalf of Melvin. She alleges that in March 2000, she learned he had, sometime earlier, been put into a class with students who exhibited "explosive personalities"-which Mosely characterizes as "special education classes"-without notice to her. Am. Compl. ¶¶ 56-57. Mosely also summarizes her allegations regarding defendants' retaliation for her activities as IASA chairperson, noting specifically that Melvin "was suspended several times ... without a valid individual educational plan (IEP) in place." *Id.* ¶ 60. She alleges that due to defendants' actions "and their failure to provide [Melvin] with a free and appropriate education in a suitable environment[, they] caused [Melvin] to suffer severe and extreme emotional distress and psychological damage" and deprived him of a high school diploma, which he otherwise would have received. *Id.* ¶¶ 63-64.

Mosely makes six claims on Melvin's behalf in her amended complaint. In Counts 1 and 2, Mosely alleges that by retaliating against her and Melvin based Mosely's exercise of her free speech rights, the defendants also violated Melvin's constitutional rights; in these claims, Mosely seeks an injunction directing the award of a high school diploma, as well as damages. In Counts 3 through 7, Mosely appears to seek only damages. In Count 3, she alleges that the defendants negligently failed to protect Melvin from harassment, causing him injury; in Count 4, she alleges that the defendants negligently failed to adequately train and supervise their employees and subordinates

and that as a result, Melvin was deprived of the benefits of a high school education and suffered other injuries. Counts 5 and 6 are claims for intentional and negligent infliction of emotional distress upon Melvin.

The individual defendants contend that each of these claims amounts to a claim under the IDEA and that because Judge Conlon ruled on remand that Mosely had failed to exhaust IDEA-required administrative remedies, the claims are barred. When the Board made a similar argument in its motion to dismiss, the Court rejected it, stating as follows:

> The Board's claim preclusion argument is lacking in merit. It is clear from Judge Conlon's ruling granting summary judgment for failure to exhaust administrative remedies that the claims asserted in that case were limited to claims under the IDEA. *See* Mot. to Dismiss, Ex. C at 1. Claim preclusion applies if, and only if, the causes of action in the first and second suits are the same. *See, e.g., Tartt v. Northwest Community Hosp.,* 453 F.2d 817, 822 (7th Cir.2006). Melvin has brought no IDEA claims in this case; rather, his claims are entirely based on the First Amendment. The Board has cited no authority for the proposition that Melvin's First Amendment claims are part of the same cause of action as his IDEA claims. The single case cited by the Board, *Tartt,* says that two claims are the same for purposes of claim preclusion is they are based on the same or nearly the same factual allegations. The allegations that were material to Jackson's IDEA claim involve whether his placements in a school special education program met,

among other things, IDEA's requirement to provide a "free appropriate public education," 20 U.S.C. § 1415(d)(1)(A), and whether IDEA's procedural requirements were met. The allegations material to Melvin's claim in the present case are that he was harassed, threats were made against him, police reports were filed against him, he was written up for misconduct at school, and he was suspended because of Ms. Mosely's exercise of her First Amendment rights. The Court cannot say that the two claims are the same for purposes of claim preclusion as a matter of law, at least not on the present record. The Board may, if it wishes, renew its claim preclusion argument at the summary judgment stage of the case, but if it does so, it should support the argument with a more complete discussion of the law regarding the identity of claims and of the facts regarding the claims made in Melvin's two lawsuits.

**\*8** In their motion, the individual defendants have done what the Board did not do: they have discussed the applicable law. In Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989 (7th Cir.1996), a case cited (but not discussed) by the Board, but only in its reply brief when Mosely had no chance to respond, the Seventh Circuit ruled that when a party seeks in a claim under some other statute, including § 1983, relief for a state of affairs that is actionable under the IDEA, he must exhaust administrative remedies, consistent with IDEA's requirements. Id. at 992-93. To put it another way, "parents [cannot] opt out of the IDEA by proclaiming that it does not offer them anything they value" or by claiming only damages. Id. at 993. If

"the genesis and the manifestations of the problem are educational" and of the type covered by the IDEA, then the claim amounts to a claim for relief available under the IDEA. Id.

The IDEA guarantees to a child with a disability the right to a free appropriate public education in the least restrictive environment. The child's home school district is required to assess the child's educational needs and address those needs through an individualized education program. 20 U.S.C. § 1414(a)-(d). The statute also requires local school districts to establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education. Id. § 1415(a). These procedures include written prior notice whenever the school district proposes to initiate or change the child's educational placement. Id. § 1415(b).

It is less than crystal clear from Mosely's amended complaint whether she contends that Melvin has a disability within the meaning of the IDEA, or alternatively that he was inappropriately categorized as such by the Board. The language she uses, however-including the terms "individual educational plan (IEP)" and "free and appropriate education in a suitable environment," Am. Compl. ¶¶ 60 & 63-are IDEA-esque lingo. This, together with the fact that Mosely squarely alleged in her earlier lawsuit filed on Melvin's behalf that the Board had violated the IDEA, strongly indicates that Mosely is, in fact, complaining that Melvin was treated in a way that the IDEA does not permit, even though she casts her claims as First Amendment retaliation and state tort claims. For this reason, the Court is constrained to conclude, based on the Charlie F. case, that Mosely is seeking relief available under the IDEA and that, as a result, her claims are subject to that statute's administrative exhaustion requirement. Because Mosely does not dispute that Judge Conlon's ruling on the exhaustion issue is binding on her, dismissal of her claims on Melvin's behalf is required. [3]

**Conclusion**

For the reasons stated above, the Court grants defendants' motions to dismiss in part and denies them in part [docket nos. 64, 66 & 67]. The Court dismisses the claims in plaintiff's amended complaint made on behalf of Melvin Jackson but denies defendant's motion as to the claims made on plaintiff's own behalf. The individual defendants are directed to answer those claims by no later than April 11, 2008. The claims against the City of Chicago are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). The status hearing set for March 24, 2008 is vacated and reset to April 17, 2008 at 9:30 a.m., for the purpose of setting a discovery schedule. Counsel are directed to confer prior to the date of the status hearing so that they can propose an appropriate schedule to the Court.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 818261

## Footnotes

1    Though not argued by Mosely's counsel, it is at least possible that Mosely always intended to sue the persons she identified in her original complaint but did not understand that she should put their names in the caption of the suit.

2    The Court does not intend to limit discovery to this particular point. Because the Board has answered the complaint, it is appropriate for discovery to proceed generally, as the individual defendants almost certainly would be deposed even were they not named as defendants.

3    If Mosely believes that the Court has misunderstood her claims on Melvin's behalf, she can and should seek reconsideration of the Court's ruling in this regard.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 1385827
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Darlene MOORE, Plaintiff,

v.

THE CITY OF CHICAGO,
Officer Bradley, et al., Defendants.

No. 02 C 5130.
|
June 17, 2004.

**Attorneys and Law Firms**

Jonathan I. Loevy, Arthur R. Loevy, Michael I.
Kanovitz, Loevy & Loevy, Chicago, IL, for Plaintiffs.

George John Yamin, Jr., James Arthur Filkins, Mara
Stacy Georges, Corporation Counsel, Dawn Eileen
Bode, William E. Bazarek, Joseph M. Polick, Stacy
Ann Benjamin, Department of Law, Chicago, IL, for
Defendants.

*MEMORANDUM OPINION AND ORDER*

MORAN, Senior J.

 **\*1** Plaintiff Darlene Moore brought this action
against defendants alleging violations of her civil
rights pursuant to 42 U.S.C. § 1983. In May
2003, she agreed to dismiss her *Monell* policy claims
against the City of Chicago (City) in exchange for
defendants' assurances that they would cooperate to
move the case to a faster trial. On March 16, 2004, we
denied plaintiff's motion for leave to file an amended
complaint reinstating those claims against the City.
Plaintiff then filed a motion to reconsider that order.
Defendant Delores Gibson–Edwards filed a motion
to dismiss the claims against her. For the following
reasons, plaintiff's motion to reconsider, along with her
earlier motion to amend, are granted, and defendant
Gibson–Edwards' motion is denied.

*Motion to Reconsider*

In our March 16, 2004 order, we denied plaintiff's
motion for leave to amend the complaint because we
determined that the claims failed to satisfy the statute
of limitations, as is required following a dismissal
pursuant to Federal Rule of Civil Procedure 41(a). *See*
*Adams v. Lever Bros. Co.,* 874 F.2d 393, 395 (7th
Cir.1989). When doing so, we believed that the City
had been entirely dismissed from the complaint as part
of the May 2003 dismissal order. That was not the case.
Instead, plaintiff's state law claims against the City
(counts VIII and IX of the second amended complaint)
were, and are, still pending.

This does not exempt plaintiff from the requirement
that her new claims must satisfy the statute of
limitations—Rule 41(a) still applies. Rule 15(c),
however, allows plaintiff to meet that requirement by
"relating back" the new claims as long as they arise
from the same set of facts contained in the original
pleading. *Donnelly v. Yellow Freight System, Inc.,*
874 F.2d 402, 410 (7th Cir.1989). Here, there is no
dispute that the *Monell* claims arise from identical
facts as the state law claims currently pending. For
that reason, plaintiff's motion to reconsider is granted,
leaving us to resolve the issue presented in the original
motion to amend: whether the May 2003 dismissal was
with or without prejudice.

Rule 41(a)(2) states that a voluntary dismissal is
without prejudice unless otherwise specified in the
order. Our May 21, 2003 order is silent as to this
issue, though it does refer to defendant's motion asking
for dismissal of the *Monell* claims, with prejudice.
Plaintiff's counsel claims not to have noticed that
language, stating that the topic was never discussed
during negotiations. The City argues that the parties
must have intended to dismiss the claims with
prejudice, otherwise it would have made no sense for
the City to agree to withdraw the motion to structure
discovery. Plaintiff insists that the opposite is true—
she would not have dismissed the policy claims with
prejudice in exchange for a mere promise by defendant
to cooperate.

There is nothing (other than the language in defendant's
motion, which plaintiff may not have noticed) to
indicate that the parties discussed this issue before
it arose in the motion to amend the complaint, and

defendant does not claim that there was. Absent any such evidence, Rule 41(a)(2) forces us to conclude that the dismissal was without prejudice. We also believe that this result makes the most sense in the context of the parties' bargain. Plaintiff has the right to reinstate the policy claims against defendant and defendant has the right to re-file its motion seeking to structure discovery. Also, while the City certainly would have benefitted from prevailing on the motion to structure, rather than agreeing to withdraw it, there were also benefits to seeing the *Monell* claims dismissed and pursuing expedited litigation of the remaining claims. This idea is supported by the fact that defendant made no attempt to modify the May 21, 2003 order prior to the filing of plaintiff's motion to amend. In any case, we do not second-guess the motivation of the parties in reaching their agreement but conclude, in light of Rule 41(a)(2), that plaintiff is permitted to amend the complaint to reinstate the policy claims. In doing so, we commend both parties for their candor in discussing the issue.

*Motion to Dismiss*

 **\*2** In plaintiff's original complaint she stated a claim against certain unknown police officers. On June 25, 2003, she filed a second amended complaint, naming defendant Gibson–Edwards for the first time. In the body of the complaint, however, Gibson–Edwards was not mentioned by name. Instead, the complaint stated only that "requests for medical attention were ignored by unknown Chicago Police Officers." Defendant Gibson–Edwards now claims that we should dismiss her from the suit with prejudice.

If a complaint mentions a defendant in the caption, but alleges no action on his/her part, that defendant should be dismissed from the action even under liberal pleading requirements. *Potter v. Clark,* 497 F.2d 1206, 1207 (7th Cir.1974). That is not the case here. Although not mentioned by name, Gibson–Edwards is referred to in the complaint. She is well aware that plaintiff is claiming that she failed to provide medical attention. In *Potter,* and the cases that follow it, no action by the defendants was mentioned in the complaint, giving them no notice of the plaintiffs' claims. 497 F.2d at 1207–08; *see also Hernandez v. County of DuPage,* 1997 WL 598132, \*9–10 (N.D.Ill.) (dismissing claims where plaintiff named four of the defendants in the caption but failed to specifically mention them in the complaint, using only the word "defendants"). Here, plaintiff simply erred in failing to change the language of the body of the complaint when naming Gibson–Edwards as a defendant.

*CONCLUSION*

For the foregoing reasons, plaintiff's motion to reconsider and her motion to amend are granted, and defendant Gibson–Edwards' motion to dismiss is denied.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1385827

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 34 of 38 PageID #:506

Estate of Keys, By and Through Doxie v. City of Harvey, Not Reported in F.Supp. (1994)

1994 WL 687479
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Estate of Robbie KEYS, By and Through
Raymond DOXIE as Special Administrator;
Tene T. Keys; Raymond and Dorothy Doxie
as legal guardian of Kaisha Keys, a minor
child of the deceased; Steve Pipes, Plaintiffs,
v.
CITY OF HARVEY, an Illinois
Municipal corporation; and Sergeant
Sampson, # 523, Defendants.

No. 92 C 2177.
|
Dec. 8, 1994.

MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

 **\*1**  Plaintiffs sued defendants, alleging that
Defendants violated the constitutional rights of Robbie
Keys and seeking to recover under ⚑ section 1983
of title 42 of the United States Code. The case
is before the Court on Plaintiffs' motion to file a
Third Amended Complaint. In their proposed Third
Amended Complaint, Plaintiffs seek to add an action
against the City of Harvey based on its alleged
failure to train its officers pursuant to ⚑ *Monell v.
Department of Social Services,* 436 U.S. 658 (1978).
Plaintiffs also seek to re-name Officer William Gavin
as a Defendant in the case. Gavin was named in the
initial complaint, but was voluntarily dismissed by
Plaintiffs in their First Amended Complaint. Lastly,
Plaintiffs seek to substitute a special administrator
for Plaintiff Steve Pipes, who died.

Currently pending before the Court is Defendants'
motion for summary judgment. Briefing on that motion
has been suspended while the Court has considered the
motion to amend.

## I. FACTUAL BACKGROUND

On April 10, 1991, Robbie Keys was shot and killed
by Sergeant Sampson, a police officer employed by
the City of Harvey. On March 31, 1992, Plaintiffs
filed their initial complaint naming the City of Harvey,
Sergeant Sampson, Officer Gavin and Officer Hill. [1]
In lieu of responding to a motion to dismiss, Plaintiffs
filed a First Amended Complaint, naming only the City
of Harvey and Sampson. Defendants filed a motion
to dismiss, which was granted in part and denied in
part by this Court in a Memorandum Opinion and
Order dated June 29, 1993. Plaintiffs were granted
leave to file a Second Amended Complaint, which
they did on August 16, 1993. Discovery proceeded
and Defendants filed a motion for summary judgment
on July 19, 1994. Plaintiffs responded to this motion
on September 16, 1994 and moved to amend their
complaint on September 20, 1994.

## II. ANALYSIS

A motion to amend a pleading shall be freely granted
when justice so requires. Fed.R.Civ.P. 15(a). Leave
to amend is inappropriate, however, where there is
undue delay, bad faith, dilatory motive on the part
of the movant, repeated failure to cure deficiencies
by amendments previously allowed, undue prejudice
to the opposing party by virtue of allowance of the
amendment, or futility of the amendment. ⚑ *Villa v.
City of Chicago,* 924 F.2d 629, 632 (7th Cir.1991)
(citing ⚑ *Foman v. Davis,* 371 U.S. 178, 183 (1962)).
Defendants argue that Plaintiffs' motion to amend
should be denied on each of these grounds except
repeated failure. The Court will consider each ground
in turn.

### A. Undue Delay

Defendants argue that Plaintiffs were aware of all the
facts necessary to state a *Monell* claim against the
City of Harvey and to re-name Officer Gavin as a
Defendant as of October 19, 1993. Defendants argue
that by waiting until September 20, 1994 to request
leave to amend, Plaintiffs engaged in undue delay.

On October 19, 1993, Plaintiffs deposed Officer Gavin
and Lieutenant William Linkus, the City of Harvey
police officer in charge of training. Plaintiffs do

not argue that any new facts concerning Gavin's involvement in the shooting have been revealed since his deposition. In fact, Plaintiffs state that Gavin's deposition was the clarifying event leading to the decision to re-name him as a Defendant. Pl.'s Supp.Mem., p. 4 n. 2. Neither do Plaintiffs argue that new facts have been revealed concerning the liability of City of Harvey. Plaintiff's allegations relating to the City of Harvey are based on testimony given by Linkus at his deposition. Proposed Third Amended Comp., ¶¶ 52, 53.

**\*2** Plaintiffs offer two explanations for the eleven month delay between the depositions of Gavin and Linkus and the motion to amend. First, Plaintiffs state that they believed there were grounds for an amended complaint only after receiving the report of a consultant, James J. Fyfe, on July 22, 1994. Second, Plaintiffs state that they were able to do research on the issues relevant to the amended complaint while preparing their response to Defendants' motion for summary judgment. The Court finds both explanations unconvincing.

Waiting for the report of a hired consultant (especially in this area) does not excuse a party's delay in amending its complaint. In this case, Plaintiffs had all the facts necessary to amend their complaint as of October 19, 1993. Plaintiffs should have amended their complaint earlier. Plaintiffs waited an additional two months after receiving Fyfe's report to file their motion to amend. Plaintiffs state that the reason for this delay was that Plaintiffs wanted an opportunity to compare Fyfe's report with that of Defendants' expert to determine if Fyfe had "overlooked anything." The Court finds this proposed justification unavailing as well. Defendants should not have to name an expert so that Plaintiffs can double check their own work. [2]

Although researching the issues relevant to the proposed amended complaint at the same time as preparing their response to Defendants' motion for summary judgment may have been efficient, it was not necessary and does not justify a delay in filing a motion to amend. Furthermore, the new issue raised in the proposed amended complaint, a *Monell* claim, is not related to those in the pending motion for summary judgment, the objective reasonableness of the force used and the functional immunity available to Sergeant

Sampson. As such, the Court does not conclude that significant overlap existed between the research of the two subjects.

The Court finds that the delay between the time the Plaintiffs were aware of the facts necessary to amend their complaint and the motion to amend is not justified. This delay, in itself, may not be undue, however, as to warrant denial of the motion to amend.

### B. Bad Faith and Dilatory Motive

Defendants argue that Plaintiffs' bad faith in filing its motion to amend is demonstrated by the fact that Plaintiffs waited until just before briefing was completed on the motion for summary judgment to file. Plaintiffs do express concern in their Supplemental Memorandum that if this Court were to grant summary judgment in favor of Sergeant Sampson, Plaintiffs would be without a claim to federal jurisdiction. This Court will not consider Plaintiffs' ability to retain federal court jurisdiction in adjudicating this motion to amend.

Although the Court does not approve of Plaintiffs' delay in filing its motion to amend and finds Plaintiffs' explanations inadequate, the Court does not conclude at this time that the delay or the timing of the motion to amend are evidence of bad faith or evince a dilatory motive on the part of the Plaintiff.

### C. Undue Prejudice to Defendants

**\*3** Defendants may be prejudiced in three ways by an amended complaint. First, the motion for summary judgment might be derailed. Second, Defendants would be forced to conduct additional discovery related to the *Monell* claim. Third, Defendants would be prejudiced by being forced to hire an additional attorney to represent Gavin in light of the potential conflict of interests between Gavin and Sampson. The Court notes that a district court is within its discretion to refuse to allow the amendment of a pleading nearly two years after filing, where the underlying facts were available during the delay and the amendment would require additional discovery. *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir.1993). This factor militates toward denial of the motion to amend.

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 36 of 38 PageID #:508

**Estate of Keys, By and Through Doxie v. City of Harvey, Not Reported in F.Supp. (1994)**

D. Futility

Defendants argue that Plaintiffs' motion to amend should be denied because it is futile. Defendants argue that the new claims asserted by Plaintiff are barred by the statute of limitations. The statute of limitations for section 1983 actions in Illinois is two years. *Kalimara v. Illinois Dept. of Corrections,* 879 F.2d 276, 277 (7th Cir.1989). The motion to amend was filed on September 20, 1994, long after the statute of limitations had expired. Plaintiffs argue that the amended complaint relates back to the date of the original filing pursuant to Federal Rule 15(c). The Court will separately discuss whether the *Monell* claim and the addition of Officer Gavin as a Defendant relate back to the date of the original filing.

1. The *Monell* Claim

An amendment to a pleading that asserts a new theory of relief against an already named defendant relates back to the date of the original filing if "the claim or defense asserted in the amended pleading arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). An amended complaint which merely alleges a new theory of recovery against an already named defendant ordinarily relates back to the date of the original pleading. *F.D.I.C. v. Conner,* 20 F.3d 1376, 1386 (5th Cir.1994); *Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730, 736 (9th Cir.), *cert. denied,* 488 U.S. 948 (1988).

The Court finds that the *Monell* claim that Plaintiffs seek to add to their complaint arose from the same conduct, transaction, or occurrence described in the original complaint. Plaintiffs, in their original complaint, sought to hold the City of Harvey liable solely under a theory of respondeat superior for the conduct of Sergeant Sampson in the shooting death of Robbie Keys. The *Monell* claim now proposed arose out of that same conduct or occurrence. A *Monell* claim is dependant upon a violation of the plaintiff's constitutional rights; it cannot be based on the policy or custom of a municipality in the abstract. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, *cert. denied,* 476

U.S. 1154 (1986); *Tom v. Voida,* 963 F.2d 952, 962 (7th Cir.1992). Therefore, the *Monell* claim proposed by Plaintiffs arose out of the allegedly unconstitutional shooting of Robbie Keys by Sergeant Sampson.

**\*4** Defendants argue that allowing the *Monell* will focus the litigation on conduct or occurrences not mentioned in the original complaint, such as the policies of the City of Harvey with respect to training police officers. Although the Court acknowledges that allowing a *Monell* claim will expand the scope of the litigation, the Court concludes that the *Monell* claim arose from the shooting death of Robbie Keys. The City of Harvey was given adequate notice of this occurrence by the original complaint. Therefore, the amended complaint relates back and is not barred by the statute of limitations.

2. The Addition of Officer Gavin

An amended complaint which seeks to add a party to a lawsuit relates back to the date of the original complaint if (1) the claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence set forth in the original pleading, (2) the party named in the amended complaint, received, within the period allowed by law for commencing an action against that party, notice of the institution of the action such that the party will not be prejudiced in maintaining a defense on the merits, and (3) the party named knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party sought to be added. *Moore v. State of Indiana,* 999 F.2d 1125, 1130 (7th Cir.1993).

With respect to Officer Gavin, the first two requirements are met. The claim against Gavin clearly arises out of the same occurrence, the fatal shooting of Robbie Keys, as the claim against Sergeant Sampson. Gavin also had notice of the suit within the time allowed because he was named, and served, as a defendant in the original complaint, which was filed within the time allowed by law.

The third factor, that the party to be named knew or should have known that they would have been named but for a mistake in the original filing, is not satisfied here. There is no suggestion of mistaken identity in

Case: 3:22-cv-50300 Document #: 83-1 Filed: 08/21/24 Page 37 of 38 PageID #:509

Estate of Keys, By and Through Doxie v. City of Harvey, Not Reported in F.Supp. (1994)

this case. Plaintiffs chose to dismiss Officer Gavin from the lawsuit rather than respond to his motion to dismiss. Allowing the proposed claim against Gavin to relate back to the original filing would essentially excuse Plaintiffs from responding to Gavin's motion to dismiss, filed over two years ago, on June 18, 1992.

The purpose of Rule 15(c) is to prevent technical missteps in pleading from preventing a resolution on the merits. Rule 15(c) "recognizes that legitimate legal claims may not be squelched when a party mistakenly identifies a party to be sued." *Hill v. Shelander,* 924 F.2d 1370, 1375 (7th Cir.1991). Although Rule 15(c) allows a party to correct a mistake regarding identification of a party, it does not provide a mechanism by which a party may undo the effects of a prior strategic decision.

Plaintiffs argue that they should be able to rename Gavin as a defendant because he had notice of the lawsuit and an opportunity to preserve facts relative to his defense. While Gavin had notice of the lawsuit, he had no reason to believe he would be sought again as a defendant, and so had no opportunity to preserve facts or prepare his defense. Gavin was entitled to rely on his dismissal. This case does not present a typical Rule 15 situation, where the unnamed defendant would escape on a technicality unless the allegations against him relate back to the original pleading. Here, the defendant filed a motion to dismiss that the Plaintiffs elected not to contest. The Court finds that the proposed claim against Gavin does not relate back and is therefore barred by the statute of limitations. The amended pleading is futile with respect to Officer Gavin. [3]

**\*5** Plaintiffs also argue that they should be allowed to add Gavin as a defendant because he is "an integral part of this lawsuit." This argument does not support a decision to allow Gavin to be named as defendant. Plaintiffs may still call Gavin as a witness if they choose to do so.

E. Summation

The general purpose of the Federal Rules of Civil Procedure is to create a structure where cases can be determined in an orderly fashion on the merits. This purpose is reflected in Rule 15. The Seventh Circuit has written:

It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems. To this end, amendments pursuant to Rule 15(c) should be freely allowed.

*Woods v. Indiana University–Purdue University at Indianapolis,* 996 F.2d 880, 883 (7th Cir.1993) (quoting *Staren v. American National Bank & Trust Co. of Chicago,* 529 F.2d 1257, 1263 (7th Cir.1976). This overriding purpose convinces the Court to allow Plaintiffs to amend their complaint to add a *Monell* claim. The Court finds that the Plaintiffs' delay in requesting leave to amend and the prejudice faced by Defendants are not so undue as to overcome the strong preference to adjudicate cases on the merits. With respect to Officer Gavin, however, the Court finds that the proposed amended complaint is futile and the delay unjustified. Therefore, the motion to file an amended complaint to add Officer Gavin as a defendant is denied.

The Court notes that this holding also reduces the potential prejudice faced by Defendants. Defendants' motion for summary judgment may still determine the entire case. If Sergeant Sampson did not violate Keys' constitutional rights, no *Monell* liability may attach to the City of Harvey. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, *cert. denied,* 476 U.S. 1154 (1986); *Tom v. Voida,* 963 F.2d 952, 962 (7th Cir.1992). Defendants' motion for summary judgment is therefore not derailed by the amended complaint.

III. CONCLUSION

Plaintiffs' motion to amend is GRANTED with respect to the *Monell* claim against the City of Harvey and the substitution of a special administrator for Steve Pipes. Plaintiffs' motion to amend is DENIED with

respect to the addition of Officer Gavin as a Defendant. Defendant is granted three weeks from the date of this order to file its reply brief on its motion for summary judgment. Status and ruling on the motion for summary judgment is set for January 19, 1995 at 2:15 p.m.

**All Citations**

Not Reported in F.Supp., 1994 WL 687479

## Footnotes

1    Unless otherwise noted, all dates referring to procedural events are taken from the chronology provided by Plaintiffs as Exhibit A to their Supplemental Memorandum.

2    Furthermore, the Court finds this explanation disingenuous. Although Plaintiffs claim that they were waiting for the Defendants to name an expert to double check Fyfe's report, they filed their motion to amend just four days after Defendants named an expert.

3    The Court also notes that the proposed amended complaint does not allege that Officer Gavin proximately caused the allegedly unconstitutional shooting of Robbie Keys. Plaintiffs allege that Sergeant Sampson was the shooter. Sampson is Gavin's superior officer. The allegations made against Gavin, that he was present at the scene, that he had been to Keys' trailer earlier in the day, that he did not determine whether Keys' daughter was present, that he did not investigate the premises for alternative methods of exiting the trailer, that he did not request medical assistance, and that he entered the trailer without probable cause, do not suggest that Gavin proximately caused the shooting of Robbie Keys. Although not necessary to its holding in light of its conclusion with respect to the statute of limitations, the Court finds that the proposed amended complaint does not state a cause of action against Gavin.

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    5