**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

Carl Jones,

              Plaintiff,

       v.

James Stehlin, *et al.*

              Defendants.

Case No.: 22-cv-50300

Judge Iain D. Johnston

### MEMORANDUM OPINION AND ORDER

Carl Jones brought this Second Amended Complaint ("Complaint") against officers in the Dekalb County Sheriff's Office and the City of Dekalb Police Department, alleging that they used excessive force during his arrest. He also sued those two entities under *Monell* theories. The County and its officers jointly answered the Complaint and moved for judgment on the pleadings, and the City and its officers moved for partial judgment on the pleadings. For the reasons below, the Motions are granted-in-part and denied-in-part.

### Parties

Plaintiff Carl Jones was arrested by Defendants. The Dekalb County ("the County") Defendants are Officer James Stehlin, Sheriff Andy Sullivan, and the Dekalb County Sheriff's Office ("DCSO"). The City of Dekalb ("the City") Defendants are Officers Sonny Streit, Elise Dusek, Mason P. Fleury, Kelly K. Sullivan, John E. Loechel, Charles Peter Verdone, Scott R. Farrell, Tony M. Kwasniewski, and Chief David Byrd, the City of Dekalb Police Department ("CDPD"), and the City of Dekalb. Jones also sued John Does 1–45, who were City or County "employees" or "agents."

### Claims

Jones brings five claims: Count I (excessive force) against Stehlin, Streit, and Dusek; Count II (failure to intervene) against those three, plus the other individual officers, John Does 1–45, and Sheriff Sullivan in his official capacity. Count III and IV (*Monell* and *City of Canton v. Harris*) against the City, DSCO, CDPD, and Sheriff Sullivan and Byrd in their official capacities; Count V (intentional infliction of emotional distress) against all Defendants.

1

## Background

The Court takes the following allegations from Jones' Complaint. It accepts the non-conclusory allegations as true for the purposes of deciding these Motions.

On March 20, 2021, Jones was involved in a disagreement with another individual. Dkt. 56, ¶ 21. Streit arrived on scene and "subdued" Jones. *Id.* ¶ 22. "Sometime thereafter" Stehlin (who Jones alleges wore "plain-clothes" and did not identify himself as an officer), Dusek, and John Does 1–45 applied "a knee to Jones' upper back," causing Jones severe pain and breathing difficulties.[1] *Id.* Stehlin, Dusek, John Does 1–45, and Streit, also "painfully contorted and applied pressure" to parts of Jones' body. *Id.* ¶ 24. Due to an earlier incident, Jones "was exhausted and unable to move on his own and struggled to inform the officers that he was unable to breathe." *Id.* ¶ 27. At some point, Jones passed out and when he gained consciousness noticed "multiple" other officers and deputies were on scene. *Id.* ¶ 28. None of those officers intervened. *Id.* ¶ 26. He alleges that, while subdued, officers allowed a citizen to assault and search him, "in direct contravention of policy and procedure." *Id.* ¶¶ 25, 28. Jones posed no threat to himself or any Defendant. *Id.* ¶ 22.

Officers placed Jones in the back of a police car. *Id.* ¶ 29. He made "multiple requests for air and water," but did not receive water and officers only "slightly" lowered the back window. *Id.* "Due to Jones' state," officers moved him to an ambulance and took him to a hospital. *Id.* ¶ 30. At the hospital, Jones rejected a blood draw and only requested air and water. *Id.* ¶ 31.

## Procedural History

On August 22, 2022, Jones filed a *pro se* prisoner complaint against Defendants Dekalb Police Department, "Stehlin Streit," Dusek, Fleury, Sullivan, Leochel, Verdone, Farrell, and Kwasniewski. Dkt. 1. As the Court discusses more below, no "Stehlin Streit" exists; the name evidently refers to either James Stehlin *or* Sonny Streit.[2] The Court dismissed that complaint without prejudice on September 19, 2022.

On October 31, 2022, Jones filed an amended complaint against those same Defendants, and again naming "Stehlin Streit." Dkt. 15. He attached the relevant police report to that complaint, written by Defendant Streit and containing references

---

[1] It's ambiguous whether a single knee was placed on Jones' back or if each officer individually placed one knee. It's also unclear what Jones means by "John Does 1–45;" throughout the Complaint, Jones sometimes uses the term to refer to forty-five different officers (*see* dkt. 56, ¶ 19) and at other times suggests it refers to one unknown person. Obviously, nearly 50 law enforcement officers couldn't have each put a knee on Jones' back at the same time.

[2] Although, on at least one occasion, dkt. 82, at 7, Jones refers to "Stalin," he wasn't present, having long been deceased, thankfully.

to Defendant Stehlin. *Id.* Following a 28 U.S.C. § 1915A screening, the Court allowed Jones to proceed against "Stehlin Streit" on an excessive force claim and against Dusek on a failure to intervene claim; it dismissed the claims against all other defendants. Dkt. 18.

Jones' attorney filed an appearance on April 20, 2023. Dkt. 43. By counsel, Jones filed this Second Amended Complaint on January 3, 2024, adding claims and parties but almost entirely repeating the underlying allegations. Dkt. 56.

**Legal Standard**

When challenging the sufficiency of a complaint, a motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). The complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). The complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests. *Piscotta*, 499 F. 3d, at 633. Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a motion for judgment on the pleadings, the court draws all reasonable inferences and facts in the nonmovant's favor. *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). The court may reject legal assertions. *Id.* The nonmovant bears the burden of establishing a complaint's insufficiency. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

**Analysis**

### a. Stehlin's Timing Issues

Both the County and City Defendants highlight the statute of limitations issues in Jones' claims. Because Jones initially brought claims against certain Defendants at different times, different statute of limitations and amendment rules apply. Ultimately, however, those issues are only determinative for Stehlin, not the other Defendants, so the Court limits its analysis to Stehlin.[3]

Section 1983 does not contain an express statute of limitations; instead, a federal court must adopt the forum's statute of limitations for personal injury claims. *Wilson*

---

[3] Jones pinpoints *Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013), and asserts that it dislodges the general rule that dismissals without prejudice restart the statute of limitations clock. *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 518 (7th Cir. 2019) (citing *Dupuy v. McEwen*, 495 F.3d 807, 810 (7th Cir. 2007)); *Lee v. Cook County, Ill.* 635 F.3d 969, 971 (7th Cir. 2011); *Elmore v. Henderson*, 227 F.3d 1009, 1011(7th Cir. 2000). *Luevano* draws a distinction between dismissal of a complaint and dismissal of an action. That's theoretically an interesting question, but because the Court ultimately dismisses the other Defendants on 12(b)(6) grounds, it conserves its resources for another day.

*v. Garcia*, 471 U.S. 261, 276 (1985). In Illinois, the statute of limitations for § 1983 actions is two years. *Herrera v. Cleveland*, 8 F.4th 493, 494 n.2 (7th Cir. 2021); 735 ILL. COMP. STAT. 5/13-202. The accrual date for excessive force is the date of arrest. *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). In this case, that's March 20, 2021.

In Jones' original two complaints, he timely brought § 1983 claims against a "Stehlin Streit" and Elsie Dusek. He alleged that "Stehlin Streit" used excessive force, and Dusek failed to intervene. The Court allowed the claims against "Stehlin Streit" and Dusek to proceed and dismissed the other parties (including Dekalb County and Sullivan) for failure to state a claim.[4]

But no "Stehlin Streit" exists. County Defendant James Stehlin exists, and City Defendant Sonny Streit exists. And as documented in the police report, which Jones attached to his amended complaint, both individuals were involved in the arrest. But for whatever reason in that complaint, Jones merged the two into one nonexistent person—an amalgam of a defendant. In this Complaint, he names both, though it's now outside the statute of limitations.

So the overarching question is whether F.R.C.P. 15(c)(1)(C) allows the claims against Stehlin to relate back to the original complaints. Relation back is appropriate when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if [the claim arises out of the same transaction or occurrence] and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The Court briefly summarizes the Parties' positions, but spoilers: they're confusing and unhelpful. No one contests that the additional claims arise out of the same transaction or occurrence.

Dekalb County Defendants, as a single unit, assert that the Court dismissed the claims against them when it dismissed everyone (Dekalb County and Sullivan included) except Streit and Dusek. Because the "Dekalb County Defendants" now explicitly includes James Stehlin, the County Defendants appear to argue that the

---

[4] No Party explicitly contests Streit's proper party status in the initial complaints, though who "Stehlin Streit" refers to is arguably ambiguous—it could be Stehlin or it could be Streit.

Court dismissed the claims against Stehlin in that initial order. And because Jones did not timely refile the claims, they're now barred.

Further, County Defendants argue that relation-back won't permit claims against any of them, because "[t]here is no legitimate question that [Jones] did not have an 'erroneous belief' regarding the proper party's identity, given the allegations in the amended complaint and the fact that he named Stehlin, Dekalb County, and the DCSO in the caption." In other words—and with fewer negatives—County Defendants appear to argue that "Stehlin Streit" actually and properly referred to James Stehlin, and so there was no mistaken identity that could trigger 15(c)(1)(C).

But that doesn't make much sense. There's only one mention of a "Stehlin" in Jones' amended complaint's caption, and that's a "Stehlin Streit." If "Stehlin Streit" refers to James Stehlin then the Court permitted Jones to proceed against Stehlin. And if "Stehlin Streit" doesn't refer to James Stehlin, then he's not included in the other parties that the Court initially dismissed, and 15(c)(1)(C) would potentially remain a viable option.

In his Response, Jones briefly argues that the claims against Stehlin are timely because "James Stehlin appeared on the caption by last name as 'Stehlin Streit.' As part of the screening process, Sonny Streit became a party, although James Stehlin did not become a party." Dkt. 82, pg. 3. Alternatively, Jones contends that even if Stehlin mistakenly wasn't properly named, the claim should relate back to the original filing, because Jones satisfies 15(c)(1)(C). Jones cites various district courts outside the Seventh Circuit to support his relation-back argument. The bulk of his Response focuses less on the threshold mistake question and more on (c)(1)(C(ii)'s notice requirement.

Doubling down, the County Defendants in Reply assert that "[t]his is not a case in which there was a mistake concerning a proper party's identity" nor "one in which a defendant was misidentified in the complaint." Indeed, they argue "[Jones] clearly knew Defendant' Stehlin's identity from the time he filed his initial complaint." The County Defendants assert that the "mistake" was instead Jones' failure to timely file an amended complaint "re-naming" Stehlin as a party. Citing this Court's decision in *Thompson v. Roser*, County Defendants argue such a failing-to-refile mistake doesn't qualify under (c)(1)(C) because it's not "an erroneous belief *concerning the proper party's identity.*" 2024 WL 2248677, at *2 (N.D. Ill. May 17, 2024) (citing *Rodriguez v. McCloughen*, 49 F.4th 1120, 1123, 7th Cir. 2022)). But again, if Jones named Stehlin in the initial complaints, then he also wasn't dismissed, obviating the need for refiling.

So, the Court is left with two arguments, neither directly grappling with the nuanced relation-back question in this case: If Stehlin, who is not a *de jure* party but whose name appeared conjoined with Streit's (a *de jure* party) in the caption of Jones'

original complaints, then a) can Jones rely on (c)(1)(C)'s "mistake" provision, and b) if so, did Stehlin have proper (c)(1)(c)(i–ii) notice?

First, the Court clarifies that Stehlin wasn't a formal party in the initial complaints, dispensing with both sides' insinuations to the contrary. And, by extension, the Court didn't allow the claims to proceed nor dismiss them. So, unless Jones survives 15(c)(1)(C), his claims against Stehlin are untimely.

In *Krupski v. Costa Crociere S. p. A.*, the Supreme Court defined "mistake" in Rule 15(c). 560 U.S. 538, 549 (2010); *Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021). Quoting Black's Law Dictionary, it held that a "mistake" is an "error, misconception, or misunderstanding; an erroneous belief." *Krupski*, at 549. The term includes "'a misunderstanding of the meaning or implication of something'; a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention'; 'an erroneous belief'; or a state of mind not in accordance with the facts.' *Id.* (quoting WEBSTER'S 3D NEW INT'L DICTIONARY 1446 (2002)); *Herrera,* 8 F.4th, at 497.

The Court finds that Jones made a mistake in neglecting to fully name Stehlin in his original complaints. If Jones understood that Stehlin and Streit were two distinct individuals, why wouldn't he name both? He listed eleven defendants, hardly a stingy pleader. County Defendants don't offer another explanation. A *pro se* plaintiff at the time, Jones more likely misunderstood the police report or failed to give it proper attention. In either case, it's a 15(c)(1) mistake about Stehlin's identity.

Jones also satisfies (C)(1)(i-ii). As Jones highlights, he listed "Stehlin" in the caption, named Stehlin's employer, and included the police report that noted Stehlin's involvement in the arrest. County Defendants don't argue that Stehlin lacked notice or that he'd be prejudiced by responding now, and nothing supports such contentions. So, Counts I and II against Stehlin aren't categorically barred.

### b. Claims

#### 1. Count I: Excessive Force

The Fourth Amendment requires that officers use only objectively reasonable force when making an arrest. *See Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016); *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013) (the reasonableness of the force used is determined by considering "the facts and circumstances that confronted the officer" at the time of the incident).

Jones brought Count I against Stehlin, Streit, and Dusek. As the Court found in its November 1, 2022 screening order, dkt. 18, Jones plausibly alleged an excessive force claim against "Stehlin Streit" and a failure to intervene claim against Dusek. Neither Streit or Dusek moved for judgment on Count I. And Stehlin raised only statute of

limitations arguments, which as the Court discussed, didn't prevail. So, Jones may proceed with the excessive force claim against Stehlin, Streit, and Dusek.

### 2. Count II: Failure to Intervene

To establish a failure to intervene claim, a plaintiff must ultimately show that each defendant personally 1) knew that a constitutional violation was committed, and 2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). Jones Brought Count II against Stehlin, Streit, and Dusek, along with Fleury, Sullivan, Loechel, Verdone, Farrell, Kwasniewski, and John Does 1–45. The Court addresses those two groups separately.

First, Stehlin, Streit, and Dusek. All three officers were personally involved in the arrest.[5] It's true that Jones isn't clear who applied the excessive force and who failed to intervene. But as Jones notes, "a defendant police officer may be held to account both for his own use of excessive force on the plaintiff as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chicago*, 700 F.3d 919, 926. The claim isn't duplicative, contrary to the City Defendants' argument. And to the extent Jones doesn't know which of the three arresting officers applied a knee to his back, discovery will shed light on that question; Jones doesn't need to perfectly identify the officer at this stage.

But the other Defendants are another story. First, Jones brought Count II against Sullivan in his official capacity, which is essentially a *Monell* claim that merges with Counts III and IV. Further, the Court dismissed these same Defendants (minus "John Does 1–45") in its 2022 order. Jones revives the claims against them but doesn't allege any additional facts. As City Defendants note, Jones' Complaint doesn't say when or if they arrived on scene, what they were doing, or where they were in relation to Jones. In his Response, Jones asserts that "all other Defendants failed to intervene," and that "[t]he officers named in the complaint were all around the scene and saw the arrest." That's as many as fifty officers descending on an arrest call.[6] As in the 2022 complaint, so too in this one: Jones doesn't raise plausible claims against these individuals. This is Jones third try and this time with counsel's assistance. So, the Court dismisses the claims against these individuals with prejudice. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013) ("But in court, as in baseball, three strikes and you're out.")

### 3. Counts III & IV: *Monell* Liability

---

[5] Stehlin only raised the statute of limitations defenses, so there's no other basis to dismiss the claims against him.

[6] Again, it's unclear what Jones means by "John Does 1–45." The Reply indicates it might be a single person. But the fact that Jones makes no attempt to differentiate the officers' involvement suggests his claims against them aren't serious.

7

Section 1983 creates a private right of action against a "person" who acts under color of state law to deprive another of a right under federal law, including the Constitution. 42 U.S.C. § 1983. "A key part of § 1983's doctrinal structure is the difference between individual and governmental liability." *Howell*, 987 F.3d at 653. Individual liability requires personal involvement in the constitutional violation and "depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Neither an individual supervisor nor a governmental entity can be held vicariously liable under § 1983. *See Burks*, 555 F.3d at 594–95; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A local government may be liable for damages under § 1983 if the constitutional violation is caused by: "(1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell*, 987 F.3d at 653.

In *City of Canton v. Harris*, the Supreme Court held that a municipality's failure to train its employees can be the basis of a § 1983 claim. 489 U.S. 378, 388 (1989). But such liability is appropriate only when the municipality, in inadequately training employees, is deliberately indifferent to a known risk. *Id.*; *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). Failure-to-train liability does not require proof of widespread violations; "a single violation can suffice where a violation occurs and plaintiff asserts a recurring, obvious risk." *Id.*

Though Jones raises two Counts against the municipal Defendants, Count III under *Monell* and Count IV under *City of Canton v. Harris*, the latter is essentially an elaboration on the former, *i.e.* the *failure* to implement a policy or program. *See Harris*, at 388 (discussing failure-to-train within the *Monell* framework).

Jones' Complaint fails under either theory. Stripping away legal jargon and conclusory allegations, the Court is left with a blank page. To establish a "pattern," in his Response, Jones points to another lawsuit he filed alleging that on another occasion police used excessive force against him. He further concludes, with no support, that the entire incident would not have occurred had Defendants trained their officers. If this sort of pleading satisfies *Twombly*, then anything does. Again, this is Jones third time and with counsel's assistance. The Court dismisses the claims against the municipalities with prejudice. *See Knight*, 725 F.3d at 819.

### 4. Count V: Intentional Infliction of Emotional Distress

Jones' Complaint, raises for the first time an IIED claim against all Defendants. Though a two-year statute of limitations period applies to § 1983 claims, Illinois state tort claims against municipalities are subject to a one-year limitation, even when the state claim is brought alongside a § 1983 one. *See* 745 ILCS 10/8-101(a); *Williams v. Lampe*, 399 F.3d. 867, 870 (7th Cir. 2005).

8

As Defendants note, Jones' IIED claim was untimely from the get-go. Officers arrested him on March 20, 2021, which triggered the statute of limitations. But Jones didn't bring *any* action until August 22, 2022, five months past the IIED's expiration, and didn't even include the IIED claim until 2024. Nor does Jones persuasively argue why the "extraordinary" and "rarely granted" equitable tolling remedy should apply. *Carpenter v. Douma*, 840 F.3d 867, 873 (7th Cir. 2016).

Jones doesn't address the IIED statute of limitations in his Response to the County Defendants. And as to the City Defendants, Jones only argues that the City Defendants waived the affirmative defense by not raising it in their Answer. But as the Seventh Circuit noted in "several decisions," a district court may permit an untimely affirmative defense, provided that the plaintiff does not suffer prejudice from the delay. *Glob. Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 733 (7th Cir. 2015); *Williams v. Lampe*, 399 F.3d. at 870. "Prejudice" means a "reduction in the plaintiff's ability to meet the defense on the merits" due to things like death, or evidence destruction. *Id.* The City Defendants raised the limitations defense in its Motion, giving Jones the chance to meaningfully address it, which he didn't take. So the Court dismisses the IIED claim with prejudice as untimely.

## Conclusion

For the above reasons, the motions are granted-in-part and denied-in-part as follows:

The Court grants the County's motion as to Counts III, IV and V, as well as Count II against Sheriff Sullivan and the John Doe Defendants. It denies the County's motion as to Counts I and II against Stehlin.

The Court grants the City's motion as to Counts III, IV and V, as well as Count II against everyone except Streit and Dusek. The City didn't move for judgment on Count I, so that Count remains.

Entered: November 4, 2024                    By:

Iain D. Johnston
U.S. District Judge

9